WALSTON H. BROWN *et al.*

*v.*

BENJAMIN R. DEYOUNG.

*Filed at Ottawa June 23, 1897—Rehearing denied October 12, 1897.*

1. CORPORATIONS—*director not entitled to salary not duly authorized.* A director of a corporation is not entitled, as against non-assenting stockholders, to receive a salary, however justly earned, unless the same is previously authorized by the by-laws or by a resolution of the board of directors.

2. SAME—*payment to officer of unauthorized salary is not void, as an ultra vires act.* The payment by a corporation to one of its officers of a salary greater than that authorized by its by-laws is not void, as an *ultra vires* act, but is voidable at the suit of an innocent stockholder injured thereby.

3. SAME—*officer receiving an unauthorized salary must account to non-assenting stockholders.* An officer of a corporation who has received a larger salary than that duly authorized is accountable for the excess at the suit of a non-assenting stockholder who is free from blame and has been diligent in asserting his rights.

4. SAME—*effect of stockholder consenting to officer receiving an unauthorized salary.* A stockholder who knows that an officer of the corporation is receiving an unauthorized salary, and who consents thereto, is not entitled to share with innocent stockholders in the excess of salary recovered on an accounting in equity.

5. SAME—*accounting for excess of salary—proper treatment of fund.* In a suit by stockholders to compel an officer of the corporation to account for excess of salary received by him, such excess should be treated as a fund out of which innocent non-assenting stockholders should be reimbursed, leaving the balance to the officer, where the corporation itself disclaims its right to the money.

6. JUDGMENTS AND DECREES—*suit to recover misappropriated funds —frame of decree.* While, in a suit to compel the restoration to a corporation of misappropriated funds, it is proper to require the same to be paid to the corporation and not to the injured stockholders personally, yet, where the effect of such a decree would be to benefit the stockholders who had assented to the misappropriation, the decree should be so framed as to benefit innocent non-assenting stockholders only.

*Brown* v. *DeYoung,* 66 Ill. App. 212, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

FLOWER, SMITH & MUSGRAVE, for appellants.

DUNCAN & GILBERT, for appellee.

Per CURIAM: This is an appeal by Preston C. Houston and others from the judgment of the Appellate Court for the First District, setting aside a decree of the circuit court of Cook county. On the hearing in the Appellate Court the following opinion was delivered by Mr. Justice SHEPARD:

"This was a bill filed by the defendants in error, comprising the minority stockholders in the Morden Frog and Crossing Works, a corporation, against said corporation and the plaintiff in error, its former secretary and treasurer, and William J. Morden, its president. The purpose of the bill was to compel the said William J. Morden and the plaintiff in error to restore to the corporation moneys alleged to have been received by them severally by way of salaries, and by Morden alone by way of royalties and otherwise, in excess of what it was alleged they

were entitled to receive, and for general relief. Pending the suit, and before final decree, an adjustment was arrived at between the complainants and Morden, and the suit was dismissed as to him. The cause, however, proceeded to a hearing as to the defendant DeYoung, and a decree was recovered against him requiring him to pay to the corporation the sum of $14,213.69, which was made up of $11,083.27 found to have been received by him in excess of the salary to which he was entitled, with $3130.42 interest thereon. This writ of error is prosecuted for a review of such decree.

"There is no claim that DeYoung improperly received any moneys except by way of excessive salary, nor that he received such except with the full knowledge and acquiescence of Morden, the president of the corporation, who, together with DeYoung, owned or controlled a large majority of the stock. The claim was, merely, that the salary received by DeYoung was not authorized by any by-law of the corporation or resolution of its board of directors.

"The salary that DeYoung received was at the rate of $2500 a year during the period he was secretary, from September 1, 1886, to August 1, 1888, and was at the rate of $3500 per year while he was both secretary and treasurer, from August 1, 1888, to January 1, 1891, whereas it is agreed that he was entitled to receive no more than $500 a year during any part of such time. The payment to him of such salary was not, therefore, an unlawful and void act in the sense that it was *ultra vires* the corporation, but was unjustifiable and voidable because not properly authorized, as against any innocent stockholder who was thereby injured.

"DeYoung came to be a stockholder and director, and the secretary and treasurer of the corporation, through the instrumentality of one of the complainants, Preston C. Houston, who was the second largest stockholder in the corporation, and who, for purposes of his own an-

tagonistic to W. J. Morden, the president and principal stockholder, transferred to DeYoung, in September, 1886, all of his stock in the corporation, under the arrangement between themselves that DeYoung should pretend to be the owner of the stock and secretly represent him, Houston, and endeavor to control Morden, the president and largest stockholder, as Houston could not do, in the management of the corporation. For his services in such regard Houston agreed to and did pay DeYoung $1000 per year from September 6, 1886, in addition to any salary that might be given to him by the corporation for his services as treasurer. So equipped by Houston, De-Young was immediately made a director and secretary of the corporation, and in August, 1888, was made treasurer also, and so continued until the end of December, 1890. During this period of about four and a half years De-Young and Morden, together, held a large majority of the stock, and they appear to have managed the affairs of the corporation as they chose, and apparently with considerable success to all concerned. It was while so situated that the alleged excessive salaries were received by both Morden, as president, and DeYoung, as secretary and treasurer, with the full knowledge and understanding of each other but without the knowledge of the other stockholders, except Houston.

"In December, 1890, DeYoung transferred back to Houston the shares he had received from him, and Houston again became a director of the corporation, and De-Young ceased to be either stockholder or officer. At that time Morden himself owned more than a majority of all the stock of the corporation, and Houston owned 1590 shares, the rest being distributed among the other complainants. It is certain that Houston understood and contemplated from the first that DeYoung was to have from the corporation an increase of salary over the $500 per year which had prevailed, and it is fairly inferable that he might at any time have known, by inquiring of De-

Young, how much salary he, DeYoung, was receiving and how much Morden was receiving. He did know, in 1888 or 1889, how much Morden was being paid, and told DeYoung, at the beginning, that it made no difference to him how much salary he, DeYoung, should get, and in July, 1888, he wrote to DeYoung that for the next year he should expect him to get enough salary out of the corporation to relieve him, Houston, from any longer paying the $1000 personally. Houston also testified that he was informed at the end of the first year that DeYoung had been getting $1500; that at the end of the second year DeYoung told him he was getting $2500, and that in June, 1890, DeYoung told him he was receiving $3500, but Houston never dissented because of it until about the time this suit was begun, in July, 1891.

"It is undoubtedly the law that a director of a corporation is not entitled, as against non-assenting stockholders, to receive a salary, however justly earned, unless previously authorized by the by-laws of the corporation or by resolution of the board of directors. Conceding such to be the law, it is admitted that DeYoung is accountable for the excess of salary received by him over the authorized sum of $500 per year, at the suit of any non-assenting stockholder who is himself free from blame and has been diligent in the assertion of his rights. But it is insisted that as against the complainant Houston, DeYoung may hold the salary he received. Such was the report of the master to whom the cause was first referred, and the trial judge before whom such report was heard well said: 'The court is of opinion that the knowledge of Houston, for the space of two years and upward, of the amount of salary received by Morden, (and by DeYoung,) and his tacit consent thereto and conduct shown by his own evidence and letters in the record, effectually debar him from any relief in this case as to the salaries of Morden and DeYoung. He who seeks equity should come with clean hands.—Pomeroy's Eq.

Jur. secs. 398, 818, 819; Cook on Stockholders, secs. 728-733; *Hall* v. *Harper*, 17 Ill. 82; *Hyde Park Gas Co.* v. *Kerber*, 5 Ill. App. 132.' And by the interlocutory decree then entered, the court found, among other things, 'that the salaries received, as aforesaid, by William J. Morden and Benjamin R. DeYoung were so received with the knowledge, acquiescence and consent of complainant Preston C. Houston, and that said Preston C. Houston is not entitled to any relief against said Morden or DeYoung, or either of them, with respect to the said salaries, but that' said complainants Walston H. Brown, James M. Flower, Columbus R. Cummings and O. S. Gaither are entitled to relief in respect thereto.'

"By the same interlocutory decree which contained the findings just quoted, the cause was again referred to a master 'to state an account, as between the corporation and each of its stockholders, as to the amounts which would be due them, respectively, in case a dividend should be paid to stockholders by reason of any moneys which he may find due to the corporation from said Morden and DeYoung, respectively, in this accountting, deducting from the amount found due the complainant Houston the proportionate share to which he would be entitled by reason of all moneys due said corporation by said DeYoung, and of all moneys due said corporation by reason of illegal salary paid to said Morden.' It was at this stage of the cause that the settlement was had with Morden and the cause dismissed as to him. The accounting proceeded, however, as to DeYoung, and upon the coming on to be heard of the master's report in that regard before a different judge from him who entered the interlocutory decree, a holding contrary to that decree was made and the final decree appealed from was entered, the effect of which was to give to Houston the same relief, as against DeYoung, which was given to the other complainants.

"We concur with counsel for DeYoung, and with the judge who entered the interlocutory decree, that Houston was not entitled to any relief against DeYoung. Had Houston been sole complainant, no rule of equity with which we are acquainted or to which we have been referred would require DeYoung, who was but his representative, as between themselves, in all that DeYoung did, to repay him compensation that had been agreed between them that DeYoung might receive for his services. Considering the original arrangement between Houston and DeYoung, under which DeYoung was to get what salary he could from the corporation, and the subsequent knowledge of Houston that DeYoung was receiving much more than $500 per year from the corporation, as shown in part, although not wholly, from his letters and testimony already referred to, and the long acquiescence of Houston under that knowledge, we think that Houston may not in equity complain of and recover back from DeYoung any part of such excessive salary. The question then arises, Does it advantage him that he is joined with others in the suit?

"It cannot be disputed but that the effect of the decree, which requires the money to be paid to the corporation, is to give to Houston the benefit of such proportion of the sum so required to be paid as his stock bears to the whole stock. The computation made by the master shows that proportion to amount to $4523.56. That computation also shows that the proportion of the amount decreed to be paid by DeYoung, to which Morden, as the owner of 2582 shares of the stock, would be indirectly benefited, is the sum of $7345.81. While the proper course in suits of this character, to compel restoration to the corporation of moneys improperly appropriated, may very well, as a general rule, be to require the misappropriated funds to be paid to the corporation, and not to the injured shareholders personally, yet where the effect of such a decree is to benefit the shareholders who as-

sented to and participated in the misappropriation of
the funds, as well as to such shareholders as were inno-
cent and free from all assent or obliquity in the trans-
action, we think the decree should be so framed as to
benefit only the latter and not the former. Complete
and perfect relief to those who are entitled to it is all
that ever ought to be given in equity. The inequity of
doing differently is well illustrated by this decree. Out
of a total of 5000 shares of stock, Houston and Morden
were the owners of over 4100 shares, and although they
assented to and participated in the very misappropria-
tion for which DeYoung is required to account, their
stock is benefited and actually increased in value to the
extent of over $\frac{4}{5}$ part of the whole sum decreed to be
paid by DeYoung, their fellow wrongdoer. This seems
to be manifestly inequitable. The owners of the other
900 shares should, it is true, be made whole, but Morden
and Houston should not be rewarded for their own cul-
pability and participation in the very acts for which De-
Young is accountable. The true way, as we conceive, in
such a case, would be to do as directed by the court who
entered the interlocutory order, viz.: Treat the excessive
salary as in the nature of a fund, out of which a dividend
should be declared, and give to the innocent shareholders
the proportion thereof which their stock bears to the
whole stock, leaving the balance to DeYoung, to whom
his co-wrongdoers, in conjunction with himself, appro-
priated it. Equity should not and will not aid one wrong-
doer as against another, and hence Morden and Houston
should have no relief against DeYoung, although the
other stockholders should.

"If the element here existed that the corporation
needed this money that DeYoung received, in order to
enable it to carry on its business, other considerations
would present themselves. But there is no such element
in the case. It appears, by inference at least, that the
corporation was fairly prosperous, and that in fact at

the very time this excessive salary was received it was declaring dividends to its stockholders. Then how manifest it is that complete equity will be done if the innocent non-assenting stockholders shall be paid such additional sums as would equal the dividends they might have received if DeYoung had not received what he was not entitled to; and who else may complain? True, the declaring of dividends is usually a matter within the sound discretion of the directors of a corporation, and until dividends have been declared the moneys of a corporation belong to itself, and not to its individual stockholders. But the corporation united with DeYoung and Morden in the answer to complainants' bill, and therein set up and insisted that complainants knew of and acquiesced in the salaries paid to DeYoung and Morden, and denied that in equity the complainants should be permitted to claim a return of such salaries to the corporation. Therefore, where, as here, the assertion of claim to the moneys wrongfully diverted from the corporation is made only by individual shareholders whose prospective dividends have been lessened and they thereby injured because of the wrongdoing of certain officers of the corporation who are their co-shareholders, and where it appears that the wrongdoing complained of was not *ultra vires* the corporation, and that the corporation did not need the misapplied funds for any corporate purpose except to divide as dividends, and where the corporation itself insists that in equity it is not entitled to a return of the moneys, it seems that full reparation may be attained and complete equity be done by giving to the injured shareholders, in such a manner as their co-shareholders who participated in the wrongful acts shall not share, all that they have lost by reason of such wrongdoing. In such a case, reparation to the shareholders who did not participate in or assent to the wrongful acts is all that equity ought to concern itself with, and such reparation should be made in such a manner as will not

bestow a premium or reward upon those other shareholders by whose participation and acquiescence the very iniquity complained of was committed. To work out relief in this case through the treasury of the corporation, in the ordinary way, is to place the undeserving upon equality with the meritorious. A decree should be framed whereby the money ordered to be paid to the corporation should in some way be limited to the use of the innocent complainants, Brown, Flower, Cummings and Gaither, only, to the exclusion of Houston and Morden. In our opinion that may be done by decreeing against DeYoung that he pay to the corporation the amount he wrongfully received, with directions that such decree be satisfied upon payment by him to Brown, Flower, Cummings and Gaither the proportionate part thereof which they would have received had the same been declared as a dividend. But equity, disregarding forms and being observant only of requiring that to be done which is right, might be completely satisfied with the simpler requirement that the moneys to which the deserving shareholders are entitled should be paid directly to them.   *   *   *

"Perhaps for the reason that no such case was ever before complained of, we have been referred to no authority, and know of none, for affording certain relief to the innocent stockholder without giving the culpable one what he is not entitled to, as would be the result if the money be decreed to be paid, generally, into the corporation treasury. But the lengthening reach of equity into the manifold intricacies of modern business should not be drawn back simply for lack of authoritative decision to guide us, where reason and every equitable consideration point the way with so much clearness.

"In *Dunphy* v. *Traveler Newspaper Ass.* 146 Mass. 495, it was held that a bill was not multifarious because of joining a claim against the president and treasurer of a corporation for moneys improperly received by him for salary, etc., with a claim against the corporation for the

payment of a dividend, and the intimation was made that, except for lack of proper parties, inequalities in previously declared dividends might be properly adjusted in the same suit.

"Having jurisdiction to compel DeYoung to account for the salary wrongfully received by him, it strikes us as being a manifest falling short of appropriate relief to deny jurisdiction to compel the application of so much of such money in a manner that will give to them who have been injured and are in a position to complain, their just proportion of it, and to refuse any part of it to them who are not equitably entitled to it."

The Appellate Court then decreed that the decree of the circuit court be set aside, and in lieu thereof entered a decree in the Appellate Court that DeYoung was equitably liable to the non-assenting stockholders, and ought to pay to them, viz.: to Walston H. Brown the sum of $839.28, to James M. Flower the sum of $162.18, to Columbus R. Cummings the sum of $1058.35, and to O. S. Gaither the sum of $284.51, with interest, etc., and judgment was entered accordingly and execution awarded.

The only objection urged to this decree of the Appellate Court is, that if paid to the stockholders P. C. Houston would be entitled to a share of the overdrawn salary, but it is contended that the decree of the lower court ordering DeYoung to pay back the whole of the overdrawn salary to the corporation was just and equitable,—that the corporation was entitled to the whole amount. These points are fully covered in the foregoing opinion of Mr. Justice SHEPARD, and we fully concur in the conclusions reached by the Appellate Court and in the views there expressed, which we here adopt.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*