## Leslie P. Voorhees, Appellant, v. Truman A. Mason et al., Appellees.

### Gen. No. 5,058.

1.  CORPORATIONS—*when compensation voted by directors to themselves illegal.*  The voting of stock by directors to themselves as compensation for services in promoting the company after the work was done, is voting back pay to themselves and is illegal.

2.  CORPORATIONS—*when ratification by stockholders does not bind dissenter.*  The acts of directors in illegally voting stock to themselves cannot be ratified by a majority of the stockholders as against a dissenting stockholder or as against one who had no knowledge of such fraudulent action.

3.  CORPORATIONS—*when action of board, providing for compensation to directors, voidable.*  When a director by his own vote and the votes of others representing his interests in the board, votes himself an exorbitant compensation for services to be performed, such action is voidable.

4.  LACHES—*when not chargeable against right to question corporate irregularities.*  A stockholder is not to be charged with having ratified the illegal acts of directors or with laches in bringing his action to correct the same when he has sought to have the

illegal acts corrected continuously from the time he learned of them.

Bill in equity. Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the October term, 1908. Reversed and remanded with directions. Opinion filed June 10, 1909.

**Statement by the Court.** This is a bill in equity filed May 21, 1906, by Leslie P. Voorhees in behalf of himself and other stockholders of the Joliet Tropical Plantation Company who may choose to avail themselves of the benefits of this suit, except the individual defendants hereinafter named. The bill alleges that complainant now and since November 10, 1902, has been a stockholder of the defendant company and the owner on the books of said corporation of five shares of the capital stock of said corporation and five income certificates of said corporation; that he purchased said stock and income certificates of said corporation on November 10, 1902, in good faith and for a valuable consideration; that the defendant, Joliet Tropical Plantation Company, is a corporation duly organized and incorporated, in July, 1902, under the laws of Delaware providing for the formation of private corporations with a total authorized capital stock of 150,-000 dollars, divided into 15,000 shares with a par value of ten dollars each, having the principal office in the city of Wilmington, state of Delaware; that among the purposes of said corporation are the purchasing and acquisition of landed property in Mexico and the development and improvement of the same by clearing, planting, building, farming and otherwise improving, and to grow, cultivate, buy and sell, etc., coffee, rubber and other agricultural products. A copy of the certificate of incorporation is attached. The bill alleges that only 1264 shares of capital stock of said corporation have been subscribed for or issued; that in the month of July, 1902, at a meeting of the subscribers to the stock, Truman A. Mason, John O. Barrett, George B. Carey, John F. Skeel, John J. Allison,

and Caleb E. Antram of the said city of Joliet in Will county, Illinois, defendants, and Gardner W. Kimball of the city of Wilmington, Delaware, were elected as the first board of directors of said company and said parties then and there accepted the office of directors of said corporation and still are and have ever since acted as the only directors of said corporation and have ever since said election exercised exclusive control and management of said corporation; that in July, 1902, after the election of said directors, at a meeting of said board they adopted certain by-laws for the government of said corporation and its officers, a copy of which is attached; that in August, 1902, the directors adopted resolutions which are still in force for the sale for said corporation to its stockholders of income certificates of said corporation entitling the owner thereof to a share of the net proceeds of said corporation in the proportion such income certificates shall bear to the whole number of income certificates issued; that said resolution provided that no share of capital stock should be issued or sold (except three shares of capital stock donated to the Delaware director) for less than par value of ten dollars, and without a corresponding number of income certificates being also purchased by the same stock subscriber, and that no income certificates should be issued or sold for a less price than $290 for each certificate, making a total for each share of stock and income certificate of $300; said resolution further provided that the purchaser of stock and income certificates might pay for the same either in cash or instalments, the certificates being retained by the corporation as collateral security until full payment had been made to the corporation; that the purpose of issuing said income certificates was to increase the par value of the shares of capital stock from $10 to $300; that in February, 1903, the board of directors by a resolution increased the price of each share of stock with its accompanying income certificate to $350; that the total number of income certif-

icates issued or sold prior to the filing of this bill was 1261; that the said corporation has received $300 or more for each of said shares of stock with its accompanying certificate except for three shares donated to said Delaware director and except such shares of stock and income certificates as have been sold on the instalment payments where all of said instalments have not matured, and also except for 180 shares of stock and 180 income certificates accompanying same which said directors of said corporation have fraudulently sold to themselves at one-half the minimum price fixed by said resolution of said directors; that each share of capital stock of said corporation which has been subscribed then had and now has an actual market value of $10 and each income certificate sold or issued had and has an actual value of $290 and upwards. The bill further alleges that in August, 1902, before complainant became a stockholder said corporation purchased 1200 acres of land in the Republic of Mexico at $10 per acre and acquired an option to purchase 1,200 acres additional at $10 per acre, which option has been consummated, and the land sold and delivered to said corporation, which land, with buildings, fences and stock are all the property the corporation now owns. The bill further alleges that before complainant became a stockholder the six directors resident in Joliet entered into a fraudulent conspiracy with one another to appropriate to themselves thirty shares of the capital stock and thirty of said income certificates then of the actual value of $9000 without paying to said corporation anything therefor, and in pursuance of such conspiracy said board of directors adopted certain resolutions granting to each of said individual defendants and to no one else the right to subscribe for and purchase ten shares of the capital stock with ten income certificates at one-half the established price therefor, or at $150 for each share of stock and certificate, and each of said individual defendants did purchase and subscribe for said ten shares of capital stock and in-

come certificates at said half price, and that no consideration was received by said corporation for said privilege so taken by said directors, although they now claim that said privilege was taken as compensation for services for promoting and financing said corporation; that the action of said directors in selling said stock and income certificates at one-half the face price was fraudulently kept secret among themselves and from complainant when complainant purchased his stock and income certificate and from other stockholders; that complainant was assured by John J. Allison, through whom complainant made the purchase of his stock, that the directors of said corporation were not receiving any compensation for services in promoting and financing the same and that no stock or income certificates had been issued or sold for less than $300 and the complainant relied on such representation; that shortly after the incorporation of said company the board of directors adopted a resolution providing that each director should be paid out of the funds of said corporation a commission of ten per cent of the par value of all stock and income certificates sold by each director; that said directors have paid to themselves as compensation and on fees in selling stock and income certificates upwards of $40,000 and that said commissions are grossly excessive.

The bill further alleges that in December, 1902, after complainant purchased his stock and income certificates the said directors resident in Joliet, without the knowledge or consent of complainant, fraudulently donated to each of themselves ten additional shares of stock and ten additional income certificates by a resolution similar to the one hereinbefore set forth donating five shares to each of themselves under which they each subscribed for and received twenty shares of stock and income certificates at half price claiming they were for services rendered in promoting, the same being aptly pleaded.

The bill further alleges that a dividend of five per

cent, amounting to fifteen dollars on each fully paid share of stock and income certificate, and a proportionate sum upon all shares of stock and income certificates not fully paid, was declared and paid in the month of May, in each of the years 1904 and 1905; that on each of said 180 shares of half priced stock and income certificates, held by said defendant directors, there was paid out of the funds of said corporation a five per cent dividend on double the actual amount paid by the said directors, and double the amount paid to any other stockholder and income certificate holder upon which the same amount had been paid; that the dividend so fraudulently paid to said defendant directors amounts to upwards of $3000; that said directors kept their said actions concerning the sale of stock and income certificates to themselves and the said commissions received by them secret and complainant had no knowledge thereof until the month of January, 1905, and that immediately upon receiving notice of such action of such directors, he made protest to said directors and the said protest of complainant was taken under advisement by said directors in January, 1905, and held until September, 1905; that in September, 1905, complainant at a stockholders' meeting, made a demand in writing on the stockholders and the directors that the defendant corporation take action and institute proceedings to recover from each of said directors the sum of $4500 and interest thereon, being one-half the price of the shares of capital stock and income certificates so taken by said directors to themselves; that after the service of said demand on the directors, the directors made various efforts to compromise the matters in controversy and offered to submit said matters to any judge of a court of record in Cook county, which offer complainant accepted, but complainant and said directors were unable to agree upon a judge; that the delay in beginning this suit was caused by the action and dilatoriness of said defendants.

The bill sets forth the statute and laws of Delaware regarding the rights, powers and duties of directors of private corporations, and that the remedies to compel directors to account are similar to those of Illinois; that there is no provision in the laws of Delaware or statute thereof permitting any director to receive or retain compensation for services as director; that ever since the incorporation of said company, John O. Barrett has been president, J. J. Allison has been first vice-president, George B. Carey has been second vice-president, Truman A. Mason has been treasurer, John A. Skeel has been secretary and Caleb E. Antram has been general counsel; that all the meetings of the board of directors and stockholders have been held in the city of Joliet, in Will county; that said company ever since its incorporation has had an office in the city of Joliet where the company's books, papers, etc., are kept; that all its stock has been issued there; that the office in the city of Wilmington, Delaware, is only a nominal office for the purpose of complying with the laws of that state.

It is alleged that complainant at no time consented to the action of the directors, giving themselves the right to purchase stock and income certificates at less than the established price, that he never ratified or approved the action of the directors in that respect; that there is no provision in the by-laws of said corporation for payment to its directors for any services; and the bill prays for an accounting to determine how much is due the corporation from the defendant directors and that they may be compelled to pay said corporation what may be found due, and for general relief.

The defendants answered, substantially admitting the allegations of the bill, except those concerning fraud and concealment, which are denied. The answer states that the stockholders by the by-laws authorized transfers of stock to be under the charge of sales agents, and that the only compensation received by such

sales agent was the difference between the ten per cent allowed such agent for making the sale and the price at which he obtained sub-agents to work for him, and denies that the directors received any compensation for the sale of stock except as sub-agents; denies that the aggregate amount of commissions was $40,000, but admits it was approximately $24,700; states that there was a large amount of labor done by the directors in organizing and planning the corporation; states that the resolution giving defendants the right to subscribe for stock at half price were adopted in pursuance of an original understanding, and admits the payment of dividends on each of the 180 shares of half price stock and income certificates; denies that the actions of the directors were secret in regard to issuing stock; states that the books of the company were open to the stockholders; that all their resolutions were upon the records; admits many conferences with complainant since 1905, and states that in July, 1903, the stockholders by a resolution elected a committee to examine the books and that that committee reported in December, 1903; that the directors have been honest in their actions; that such report was printed and sent to the stockholders, and that in July, 1905, the report of said committee was accepted by the stockholders without any dissenting vote; states that afterwards a committee was chosen to audit the books and it was directed to inquire into the acts of the directors regarding the selling of stock and other services; that this committee made a report which was unanimously adopted in December, 1905, and states that complainant was at that meeting. A replication was filed. The court heard the case on the pleadings and evidence, and dismissed the bill for want of equity. The complainant appeals to this court.

BORMAN & McGRATH, for appellant.

C. E. ANTRAM and J. L. O'DONNELL, for appellees.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

The theory of appellant is that the directors of the corporation have wrongfully appropriated the funds of the corporation by voting themselves stock and income certificates at half price as pay for work done by them in promoting the company and for responsibility claimed to have been assumed by them in buying the lands now owned by the company, and in paying commissions to themselves for the sale of the stock and income certificates when neither the laws under which the corporation is organized, nor the laws of this state, nor the by-laws of the company, provide for any compensation to the directors or officers. The proof clearly shows, without any claim *contra,* that the appellant bought his five stock and income certificates through one of the directors on his statement that no one made anything out of it but the stockholders.

Officers of a corporation occupy the position of trustees for the stockholders with respect to the business and property of the corporation, and cannot have or acquire any pecuniary interest in conflict with their duties as such trustees. Hooker v. Midland Steel Co., 215 Ill. 444. The voting of the stock by the directors to themselves as compensation for services in promoting the company after the work was done, was voting back pay to themselves and is illegal. "It is the same as giving away the assets of the company." Cook on Stock and Stockholders, sec. 657; Brown v. DeYoung, 167 Ill. 549. The acts of the directors in illegally voting stock to themselves could not be ratified by a majority of the stockholders as against a dissenting stockholder or one who had no knowledge of such fraudulent action.

It is urged that this suit cannot be maintained because of the time that elapsed between the acts complained of and the beginning of the suit. The record shows that the directors, while they reported other

matters to the stockholders, never made any report of their actions concerning the stock issued to themselves, and the appellant had no reason to suspect such irregularities. The first notice that appellant had of the directors each having secured thirty shares of stock and income certificates at half the price that other investors paid was in October, 1904; this he obtained from the report of an auditing committee appointed by the stockholders. Immediately thereafter a correspondence between appellant and the secretary of the company was begun, and as early as January 3, 1905, the secretary wrote to appellant giving a variety of excuses for his delay in answering appellant's letter. From that time to the beginning of the suit there was a controversy between appellant and the directors, the appellant insisting that the directors should either pay for their special stock the same amount as other parties paid or that they should cancel such stock. The directors from the time appellant questioned the propriety of their actions endeavored to find some way of compromising or arbitrating the matter. The appellant is not to be charged with having ratified the acts of the directors or with laches in bringing this suit, when he has sought to have the irregularities corrected continuously from the time he learned of them. Cratty v. Peoria Law Library, 219 Ill. 516.

The proof clearly shows that the directors who are defendants each received thirty shares of stock and accompanying income certificates at $150 per share while other parties paid $300 or more. The directors voted this to themselves as they claim for responsibility assumed in buying 3200 acres of land at ten dollars per acre. The notes for the purchase of the land were neither signed nor endorsed by any director, but executed by the company alone. If their theory be correct then they subscribed for and voted to themselves $27,000 for verbally guaranteeing the payment for the land for which the total purchase price was $32,000, when over $190,000 of certificates had been sold, not

including the directors' special stock. These facts are convincing that the claim of the defendant directors that this special stock was for guaranteeing the payment of the notes for the land, is a mere subterfuge. The claim that the directors' special stock was for promoting the company does not appear to have been made in good faith, for the reason that at the first meeting of the directors in Illinois they pretended to pay themselves for their work and responsibility by the issuing of the first ten shares to each, and six months later they again pay themselves for the same work and responsibility by voting twenty additional shares to each of themselves on the same terms. The law will not permit such action by directors with the property they are in control of as directors.

The only remaining question is, should the directors account with complainant for the commissions received by them? Section 14 of the by-laws provides that "The secretary shall be secretary of the board of directors and of the standing committees. He shall be general sales agent of stock and income certificates." At the first meeting of the directors in Joliet, Illinois, they elected themselves each to some office, and passed a resolution, "That commission on sales of income certificates be limited to ten per cent of such sales," and that of this commission $5 be paid to the secretary and $25 "to general agent or director making sale." The total commissions paid by the company prior to June 1, 1903, was $2244.56 of which the secretary received $756.40 and the remainder was all paid to the Joliet directors. From June, 1903, to June, 1904, the company paid $5304.21, in commissions for sales of stock, etc., of which the secretary received $1103.60 and $4200.61 was paid to the remaining Joliet directors. The answer admits the payment of $24,700 commissions to the secretary and other directors on the sale of 1261 shares of stock and income certificates. On 180 of these directors' special stock and certificates, no commission was paid. The resolution fixing the

commissions to be paid was passed by the directors before any of the income certificates were sold.

When a director by his own vote and the votes of others representing his interests in the board votes himself an exorbitant compensation for services to be performed such action is voidable. Harris v. Lemming, Harris Agr. Works, 43 S. W. Rep. 869, Tenn. The resolution allowing a commission to the secretary and other directors passed by themselves was voidable. Fritze v. Equitable B. & L. Soc., 186 Ill. 183; Adams v. Burke, 201 Ill. 395. However, the record shows that appellant was present at the annual stockholders' meeting in 1903 and 1904 at which reports of the payment of commissions on the sale of income certificates were made, and appears to have taken no exception thereto. Appellant claims not to have remained during the entire meetings, but from the evidence he had an opportunity to know what was being done in paying commissions on sales of stock and he must be held to have ratified the action of the directors in paying commissions so far as the same were reasonable. The secretary was clerk of the Joliet School Board and assistant superintendent of schools, and only devoted such time to the duties of the office as was not taken up with his school duties. Another of the directors was a principal in one of the Joliet public schools. The others were business men in Joliet. They would appear to have been quite liberal in the payments of each other from the funds of the Joliet Tropical Plantation Company, but appellant has not offered any proof that such payments were excessive or not earned, and we are not permitted to guess they were such, notwithstanding their appearances. We therefore hold the appellant is not entitled to an accounting regarding the commissions.

This suit was begun in behalf of the appellant and all other stockholders who might choose to come in and avail themselves of the benefits of this suit. No other stockholders have taken advantage of their right

to be made parties to this suit and the appellant can only maintain it in his own behalf.    Brown v. De-Young, *supra*.    This cause will be reversed and remanded to the Circuit Court, with instructions to that court to take an account between the individual defendant directors and the company, and to charge each of the said directors with the full price of each share of stock and income certificate taken by him at half price, and with the dividends on said certificate received by him on said stock and income certificate and half the dividends paid to him, and the court will decree that each defendant director pay to the appellant such proportion of the amount found due from such director as the number of shares and income certificates owned by appellant shall bear to the total number of shares and income certificates sold, decreeing the balance to such director under the rule announced in Brown v. DeYoung, *supra*.

*Reversed and remanded with directions.*

Mr. Justice DIBELL took no part in the consideration of this case.