**Edward Scofield, Appellant, v. Marinette Saw Mill Company et al., Appellees.**

**Gen. No. 15,009.**

1. RES JUDICATA—*when order interlocutory. Held*, that the order in question in this case approving the conclusions of the master as to law and fact and referring the entire cause to him to state an account, etc., was merely interlocutory and did not fix and establish the rights of the parties so as to enable the invocation of the doctrine of *res judicata*.

2. CORPORATIONS—*burden to establish misappropriation by officers.* A stockholder who charges misappropriation of corporate funds by officers of a corporation must assume and carry the burden of establishing such misappropriation.

Bill in chancery. Appeal from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed March 31, 1910. Rehearing denied April 10, 1910.

**Statement by the Court.** The complainant, appellant herein, filed a bill in the Circuit Court in which among other things it is alleged that complainant was a stockholder and director of the defendant company, a corporation organized under the laws of Illinois, having a capital stock of $100,000 represented by 1,000 shares, the par value of which is $100 each. Of these shares the complainant owns 250.

The bill sets forth at considerable length the history of the company, which for the purposes of this case it is not necessary to here relate. It is stated that the business of the Marinette Company since its organization up to the time the bill was filed, has been the operation of two saw mills located at Marinette, Wisconsin, which it purchased and owned, and the dis-

posal of the lumber sawed. The complainant alleges
that he was superintendent of these mills and had en-
tire charge of their operation. While they were oper-
ated under his direction as superintendent, correct
books of account were there kept. These books by di-
rection of Turlington W. Harvey, president of said
company and a defendant herein, were subsequently
forwarded to the general offices of the company at Chi-
cago. General books of account were kept at the gen-
eral offices under the direction of said Harvey, which
it is charged pretended to contain the entire business
transactions of the company, but "were not correctly
or accurately or honestly" kept. The business is al-
leged to have been very profitable, and it is averred
that out of its business during the first three years of
its existence, the company paid $75,000 with interest
for the purchase of mill number one; that the mill
meanwhile, out of the profits of the business, was
largely increased in capacity and value and was well
worth $100,000 after the purchase price had been paid
in full, and was treated as paying in full the original
subscriptions to the capital stock which was then is-
sued to each of the subscribers or their assigns full paid
and non-assessable; that in addition the profits enabled
money dividends to be declared, which were by com-
mon consent of the stockholders left in the treasury of
the company, and amounted during said three years to
about $10,000; that until January 1, 1891, the business
continued to be prosperous so that the net profits
averaged at least the sum of $25,000, and in addition
the company was enabled to and did purchase and pay
for mill number 2 at DePere, Wisconsin, and its re-
moval and reconstruction at Marinette. It is alleged
that for the years 1887, 1888 and 1889 there was actu-
ally paid out to the stockholders in money dividends
more than $70,000, and that there was earned over
and above all expenses and should have been declared
as dividends during the year 1890 at least $34,000. It
is further averred that in the Spring of 1891 complain-

ant leased the mills for the year beginning January 1, 1891, and ending January 1, 1892, and that during that year from about April 15th to November 15th he paid the company out of the earnings of the mill as rental about $20,000, and at the close of the sawing season turned over the mills to parties who purchased them in first-class order and repair.

Complainant further alleges that until he leased the mills he had received a salary of $1,800, and it was his habit in addition to draw money with the consent of the directors as needed by him, and make settlement therefor when dividends were declared; that in 1890 knowing the company to be doing a prosperous business, and with the like consent of the directors, he drew money from time to time, expecting as before to make settlement with the company when he should receive the dividend for that year; that the amount so drawn by him was $10,000; that no dividend was declared for that year and no settlement made therefor; that after the agreement to lease the mills to him was made in the Spring of 1891, and after he had entered into large contracts on that account, said Turlington W. Harvey as president of the company refused to execute and deliver the lease as agreed upon until complainant should execute and deliver his notes for the money so drawn by him, with interest; that complainant protested that if a correct accounting was had and a proper dividend declared, he would not be indebted to the company except possibly for a small amount, which he was ready and willing to pay.

Complainant says that then for the first time he was told by said Harvey that said company was largely indebted to the T. W. Harvey Lumber Co. for between $60,000 and $70,000; that said Harvey admitted he could not then state on what account said debt had accrued, but would cause an investigation to be made and would explain fully to complainant the business of the company, but that meantime he would decline to execute the lease to complainant unless the latter should

execute and deliver said notes; that if this was done and upon final accounting it should appear that anything was due complainant he would be credited accordingly. Complainant says that under protest he did thereupon execute and deliver to the Marinette Company his notes aggregating about $10,000, maturing about July 20, 1891. It is alleged that when said notes matured complainant refused to pay them, until he had a statement of the condition of the company, an adjustment of its business, and credit upon the notes to which an accounting would show him entitled; that said Harvey visited complainant at Marinette and told the latter he need not pay the notes at that time, but could renew them so as to have them fall due at different dates in October and November, 1891, and in the meantime he would be advised of the exact condition of the company's affairs and credited with whatever a just and fair accounting should show him to be entitled; that relying on this promise he executed and delivered new notes.

It is further set forth that there was a subsequent sale of the mills for a total of $67,000, to which complainant reluctantly consented; that the money from the sale was paid to said Harvey, who insisted that all the assets of the company had been or would be exhausted to pay its debts. Complainant alleges that no such legitimate indebtedness existed and that there was never any occasion for the Marinette Company to become indebted to the T. W. Harvey Lumber Co. or any other corporation, the profits of the Marinette Co. having been at all times more than sufficient to pay all legitimate indebtedness.

Complainant avers that he has persistently attempted to obtain a settlement and accounting with the Marinette Co. without success; that he has been furnished with what purports to be a transcript of the account of the Marinette Co. with the Harvey Lumber Co., which however does not show the items constituting alleged cash transactions; that it is claimed by said

Harvey that the T. W. Harvey Lumber Co. furnished the Marinette Co. as its banker with large amounts of money, for which large interest balances have been charged; that these transactions are fictitious and were run into said account for the sole purpose of cheating and defrauding complainant.

It is alleged that suit has been brought on complainant's notes in the federal court in this district, and is charged on information and belief that said Harvey is in great financial straits, and that with the consent of his fellow-directors in the Marinette Co., other than complainant, said directors being his two sons and his father-in-law, he has appropriated money of the Marinette Co. to his own use, on the pretense that said company is indebted to said Harvey Lumber Co., of which said Harvey is the alleged owner.

Complainant therefore prays for an injunction restraining collection of his said notes, for a receiver to collect the accounts and take charge of the property of the Saw Mill Company, wind up the company and distribute its assets under the direction of the court.

Defendants answered denying the material allegations of the bill, asserting that the business of the Marinette Co. was not profitable during the years 1889 or 1890, setting forth at length the manner in which its affairs have been conducted, and denying that complainant is entitled to the relief sought.

The cause was referred to a master, whose report was adverse to the defendants. Subsequently, February 13, 1907, the exceptions of the defendants to the report of the master were overruled and the cause re-referred for such further proof as any of the parties should desire to offer, the master to report the same with his conclusions upon the law and the evidence without prejudice to the right of complainant or defendants hereafter to file objections and exceptions to any and all findings or conclusions.

Upon the 6th of January, 1893, a stipulation was filed, whereby it appears that a judgment was on Janu-

ary 5, 1893, entered in the United States Circuit Court for the Northern District of Illinois in favor of the Marinette Saw Mill Company against complainant for $12,113.35. It was stipulated that by consent an order should be entered restraining the Saw Mill Company from levying execution upon and from assigning that judgment, and from commencing any suit thereon at law or in equity until the final disposition of this suit. An injunction was thereupon issued in accordance with the stipulation.

On March 17, 1908, a final decree was entered in the Circuit Court dissolving the injunction order of January 6, 1893, and dismissing the bill for want of equity. From that decree this appeal is prosecuted.

Horace G. Stone and Ira C. Wood, for appellant; Spooner and Ellis, of counsel.

Herrick, Allen, Boyesen and Martin, for appellees.

Mr. Justice Freeman delivered the opinion of the court.

This cause having been referred to a master, the latter reported among other things that he could not now from the books of the Marinette Saw Mill Company and the testimony make an accurate or complete statement or account showing all the transactions of the Saw Mill Company from the time it began its business until the time of filing the bill of complaint; that complainant is entitled to have from the defendants and principally from defendant, Turlington W. Harvey, a complete and detailed explanation of all the transactions of the Saw Mill Company and of all the items appearing upon the books of the Company, particularly the books kept at Chicago, from the time when the company began business to the time of filing the bill; that there are so many entries that are without any explanation or description that the master could not draw off a correct statement of the account that would be clearly supported by the record, and that

he thereupon directed that as to all items to which objections were made evidence should be introduced. The record was thereupon on defendant's motion certified to the court.

The defendant's objections and exceptions are in part to the effect that the master erred in finding that all the items appearing on the company's books could not be understood and that an accurate and complete statement cannot be made; that the master erred in finding as a matter of law that complainant is entitled to have from defendants and particularly from Turlington W. Harvey a complete and detailed explanation of all the transactions of the Saw Mill Company and of all the items appearing upon the books of the Company from the time it began business to the date of filing this bill; that the master erred in not finding that the evidence introduced on behalf of the complainant does not sustain the allegations of the bill that the books of the company were fraudulently kept for the purpose of concealing the result of its business, or that the defendants wrongfully profited in the property or assets of the company for their own benefit; that the master erred in not finding that from all the evidence taken before the master it is shown the defendants have not wrongfully misappropriated any of the property or assets of the Saw Mill Company, and that the report is in other respects erroneous. These exceptions were argued before Judge Honore, then sitting as chancellor in the Circuit Court, by whom it was ordered of date Feburary 6, 1907, as follows: "It is hereby ordered that said exceptions and each of them be overruled; that said master's report as to the conclusions of law therein contained be approved and confirmed and that this cause be re-referred to the master to take such further proof as any of said parties may desire to offer, and to report the same, together with the evidence heretofore taken in this cause, with his conclusions upon the law and the evidence without prejudice to the right of complainant or defendants hereafter to file objections and exceptions to

any and all findings or conclusions of said master which may be made upon further hearing of this cause, or which may be contained in a further or final report filed by said master in this cause.''

Upon the second accounting the master reported *inter alia* that ''there was imposed the burden on the defendants of producing a valid and complete statement which should embrace all of the transactions shown in said (defendant's) books and explain the items objected to that did not show what they were.'' The master thereupon ''ordered the defendants to file such complete report and to produce vouchers or evidence in support of the items objected to by the complainant and as to which the objections were sustained by the master.'' This the defendants declined to do and thereupon the master reported that the contentions of the complainant should be sustained and the defendants adjudged ''indebted to the complainant in the amount by him named and stated to be $5437.51.'' To this the defendants objected and exceptions were argued before Judge Carpenter, then sitting as chancellor, by whom the defendants' exceptions were sustained and the bill dismissed as hereinbefore stated.

It is first contended in behalf of the plaintiff that Judge Honore's order of February 6, 1907, ''was a final order which fixed the liability of the defendants to account for the Marinette Company assets'' and that the succeeding chancellor had no power to set it aside on March 17, 1908, when the judgment appealed from was entered. The argument is that the order of February 6, 1907, sustained the master in holding that complainant was entitled to ''a complete and detailed explanation of all the transactions of the Saw Mill Company and of all the items appearing on the books of the company'' from the defendants, that this order finally settled the law of the case in that respect, that it was a final order never appealed from nor vacated, and therefore still in full force and effect, and that it was too late to set it aside when the final decree ap-

pealed from was entered. It is said this view was sustained by Klein v. Independent Brewing Co., 231 Ill. 594-603. We are unable to concur in the contention of complainant's counsel. The order of February 6th, while approving the master's conclusions of law, contained no express reference to or approval of any other part of the report. It was simply, as we understand it, an expression of approval of the master's view of the law applicable as expressed in his report, but at the same time it referred the entire cause for further proof without prejudice to the right of the parties to except "to any and all findings or conclusions of the master" upon any and every feature of the case "in a further or final report." No further proof seems to have been offered and the master thereupon made a final report, to which exceptions were argued upon the final hearing before the chancellor who entered the final order appealed from, which for the first time "finally fixed the rights of the parties." Klein v. Ind. Brew'g. Co., *supra,* p. 603. The order of Judge Honore was in our opinion merely interlocutory.

It is contended in behalf of complainant that the defendants must account. On the other hand it is argued that the only theory upon which the bill can be maintained is as a stockholder's bill to recover property of the corporation alleged to have been fraudulently misappropriated by appellees. It is urged that there is no evidence in the record to establish the allegations of fraud contained in the bill. It seems to be conceded by complainant's counsel that the books of account of the corporation were honestly kept up to January 2, 1889. But the claim seems to be that from and after that date fraud was committed in that respect. We find no reference to evidence which can fairly be said to establish that contention. It seems to be conceded as a matter of law that "if Scofield claimed that transactions were improper, the burden was on him to prove it;" but it is said that while this is good law "it does not take effect in this case until

defendants produce a set of books or an account which
describes those transactions so that Scofield can tell
what they were.'' No authorities are cited in support
of this contention. It is said that Brown v. DeYoung,
167 Ill. 549, was similar to the case at bar and sus-
tains complainant's contention. An examination of
that case does not bear out complainant's contention.
There the misappropriation of the corporation's as-
sets for salary not authorized was established by
competent proof. No competent evidence justifying
a finding that there has been any misappropriation in
the case at bar for any purpose by any of the defend-
ants has been called to our attention, in this volumi-
nous record. The complainant seeks to recover from
the corporation itself as well as the other defendants,
assets suspected rather than proved to have been mis-
appropriated, and in effect says to the defendants,
''I do not know that you have been guilty of such mis-
appropriation, but I think you must have been and I
call upon you now to prove yourselves not guilty by
explaining all the entries in the books of the corpora-
tion which seem to me suspicious, although said books
appear to have been regularly kept and to have been
open to my examination at all times as a stockholder
had I so desired.'' The master found with reference
to the operation of the mills as shown on the Chicago
books that the totals agree with the totals on the Mar-
inette books kept under the supervision of the com-
plainant, that these sets of books harmonize, that the
books of the company show profits during the first
three years of the company's business which were
used in payment for the company's saw mills and divi-
dends sufficient in amount to pay up the company's
stock; but that after that time until the mills were
disposed of in 1891 and the active business of the cor-
poration ceased, it appeared from the books and testi-
mony that no profits were realized and that it was this
which induced the company to sell the mills and other
property; and that the amount realized from such sale,
about $67,000, was applied in discharge of existing li-
abilities of the corporation.

It further appears from the master's finding that in 1890 the saw mills company acquired logs from the defendant Harvey Lumber Company for about $153,-000, and that said lumber company furnished the Marinette Co. funds to the amount of about $85,000 to purchase other logs; that the Marinette Company did not at any time have sufficient finds on hand to pay for the large quantities of lumber it bought and to meet the expenses of its mills. The Lumber Company as there is evidence tending to show acted as financial agent for the Marinette Company and negotiated its paper. This is undisputed, and without evidence tending to show any wrong doing, it is sought to put the burden upon the Lumber Company and other defendants of explaining the many items of this account in detail, to prove affirmatively that there has been no wrong doing. This does not appeal to us as equitable under the circumstances of the case, especially where as here no fiduciary relation is shown to have existed toward complainant by all these defendants whom it is sought to compel to assume the burden of exonerating themselves from a charge of misconduct as to which there is no competent evidence.

The view of the master that not all the items on the books of the corporation can now be understood is based upon the testimony of certain expert witnesses. This, however, is the extent of their evidence to this effect and furnishes no affirmative proof of wrong doing. It appears from other testimony that the books correctly represent the condition and results of the company's business, and some of these alleged unintelligible entries appear to have been subsequently explained.

We cannot undertake to review further the evidence in detail. It must suffice to say that inasmuch as no proof of fraud or misappropriation on the part of the defendants appears, we are of opinion the bill was properly dismissed. The decree of the Circuit Court must therefore be affirmed.

*Affirmed.*