JOHNSON et al. v. KING–RICHARDSON CO. et al.

Circuit Court of Appeals, First Circuit. January 6, 1930.

No. 2388.

Edwin H. Abbot, Jr. (of Allen, Abbot & Packer), of Boston, Mass., for appellants.

Joseph B. Ely (of Ropes, Gray, Boyden & Perkins), of Boston, Mass., for appellees.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a bill in equity brought January 2, 1924, by John Rudin, a citizen and resident of Chicago, Ill., Frank W. Johnson, a citizen and resident of Buffalo, N. Y., and Raymond S. Branch, a citizen and resident of Chicago, Ill., against the King-Richardson Company, a New Jersey corporation, having its principal place of business at Springfield, Mass., and William H. Nevins, a citizen and resident of said Springfield, on behalf of themselves and all other stockholders of the corporation, and for its benefit.

In the bill it is alleged that the corporation "for many years has been and now is in the business of publishing and selling a set of books known as 'The Bible Story'"; that for over seven years Nevins has owned a majority of the stock of the corporation (314 out of a total of 500 shares), and by means thereof during said time had caused himself to be elected president, treasurer, and director of the corporation, had selected other directors (two) satisfactory to himself, and had assumed the whole management of the company; that Rudin was and for many years had been the owner of 20 shares of the stock of the corporation, and was such at the time of the transactions complained of; that Johnson was and for many years had been the owner of 123 shares of stock of the corporation and was such at the time of the transactions complained of; that Branch was and for many years had been the owner of 10 shares of said stock and was such at the time of the transactions complained of; that through the connivance or negligence of the directors Nevins had been permitted to deal with himself and to procure the printing and binding of The Bible Story to be done by himself at excessive prices, and had diverted to himself large profits; that he had substituted cheaper material for the materials required in the various styles of printing and binding, had purchased materials from himself at excessive prices, paid himself an excessive salary, charged expenses incurred for and in connection with his personal business to the corporation, and in other ways mismanaged the corporation for his personal profit; that in September and again in October, 1923, the complainants requested the directors to investigate the business of the company and to require Nevins to account to the corporation for the conduct of its business, but that they had neglected and refused to do so; that the directors were aware of the various breaches of duty committed by Nevins alleged; that they were either in collusion with him or unmindful of their duty; and that further application to them or to Nevins would be useless. The prayer of the bill was for an examination of the books, for discovery, for accounting, and for general relief.

The case was sent to a master, who made a report as to the transactions complained of, in which, after stating the account, he found a balance due the corporation of $41,415.59.

When the case came before the District Court upon the Master's report, an interlocutory decree was entered confirming the findings of the master but not his rulings of law; and a final decree was entered dismissing the bill, with costs.

The reasoning by which the District Court reached its conclusion, that the bill should be dismissed, was this: That Branch, at the time the bill was brought, was not then a stockholder, having disposed of all of his interest in the 10 shares standing in his name; that although Johnson was a substantial owner of stock, in this matter he acted only at the request of Rudin, who had agreed to bear all the expenses of the litigation, and was a mere stool-pigeon of Rudin; that Rudin was the active plaintiff; that while the master did not in terms find that this suit was

brought by Rudin in bad faith and for the purpose of putting the corporation out of business, the primary facts bearing upon the question and found by the master warranted such a conclusion. In other words, the position of the District Court was that Rudin, who up to January 21, 1923, had operated a branch agency in Chicago for the corporation in the sale of its Bible Story, had become a rival of the corporation, having established a business for the publication and sale of a like book, and that his motive or purpose in instituting this suit was not in good faith to redress wrongs honestly believed to exist, but to drive the corporation out of business. In support of its ruling, the District Court relied upon the decision in Forrest v. Manchester, S. & L. Ry. Co., 4 De Gex F. & J. 126.

The complainants have assigned this ruling as error. Their contention is that even if Rudin brought the suit with the motive or purpose of driving the King-Richardson Company out of business, that would not justify a dismissal of the bill; that if the conclusion reached in Forrest v. Manchester was right, as applied to the facts in that case, the doctrine there announced had not been extended in England, or in this country, to a state of facts like those here involved.

■ The rule generally prevailing is that, where a suitor is entitled to relief in respect to the matter concerning which he sues, his motives are immaterial; that the legal pursuit of his rights, no matter what his motive in bringing the action, cannot be deemed either illegal or inequitable; and that he may always insist upon his strict rights and demand their enforcement. Bull v. International Power Co., 84 N. J. Eq. 6, 10, 92 A. 796; Davis v. Flagg, 35 N. J. Eq. 491, 494, 495; W. D. Cashin & Co. v. Alamac Hotel Co., 98 N. J. Eq. 432, 131 A. 117; Borough of Vineland v. Maretti, 93 N. J. Eq. 513, 117 A. 483; Morris v. Tuthill, 72 N. Y. 575; Ramsey v. Gould, 57 Barb. (N. Y.) 398; Toler v. East Tenn. R. Co. (C. C.) 67 F. 168, and cases there cited.

The specific question here raised was passed upon in Hodge et al. v. United States Steel Corp. et al., 64 N. Y. Eq. 111, 53 A. 553, 555, and it was held, that: "Where the only method of protecting or asserting a property right of complainant is in a court of equity, the court cannot refuse to decide or hear a complainant upon the question of right merely because of his improper motive in the acquisition or prosecution of his rights. That the motive of a complainant in prose-

cuting an equitable property right is to be bought off is not a reason for dismissing the case and refusing to try the question of right. Complainant is entitled to have the question of such alleged equitable right tried." In the opinion delivered in that case, Forrest v. Manchester, supra, and other English cases, are reviewed and, after pointing out the grounds of the decision in the Forrest Case (decided in 1861) and the grounds of the decision in Seaton v. Grant, 2 Ch. App. 459 (decided in 1867), the court said: "In the decision of these cases based on the representative character of the complainant, the bona fides of the suit seems to depend primarily on the question whether the suit is in fact the suit of the complainant, or is in fact the suit of, and controlled by, others, not interested as stockholders. And the rule as to refusing protection by injunction, or declining to hear the cause of a complainant, because of his improper motives in acquiring his rights, or the improper purposes of enforcing them by suit, has not been extended in England to cases where the complainant is asserting a right of property inherent in himself, as stockholder or otherwise." See also Ramsey v. Gould, supra.

■ Rudin, in bringing this suit, is not proceeding in the interest of a rival of, and a stranger to, the corporation, as was the situation in the Forrest Case. He is proceeding in his own right as stockholder in the corporation; and alleges in substance that, as such stockholder, he has sustained a wrong through the injurious effect upon his stock of the wrong done the corporation by Nevins; and that the only method open to him to redress the wrong is by the present suit, the corporation through its directors having refused to right the wrong done the corporation and relieve him of the damage he has sustained in his stock ownership. And such being the case, we think the District Court erred, unless there are other substantial grounds for dismissing the bill; for Rudin's motive, in bringing the suit and asserting his equitable rights, affords no ground for refusing to hear and decide the case. It follows, therefore, that unless Rudin and Johnson, the only complainants owning stock in the corporation at the time the suit was brought (for Branch had ceased to be an owner of stock, although he alleged in the bill that he was an owner), have failed to prove a breach of duty to the corporation and themselves, and unless they have been guilty of laches, or by reason of acquiescence in the acts complained of are estopped or

have waived their right to complain, the dismissal· of the bill, without passing on the merits of the controversy, was error.

The master found that Rudin and Johnson "waived and abandoned any claim or right which they may have had to demand or require from Nevins any accounting as to his charges for printing and binding the books of the King-Richardson Company, prior to · Dec. 1920," and that "they acquiesced in and approved of the prices charged by him for printing and binding the books of the King-Richardson Company after that time." But he ruled that their waiver and acquiescence did not affect the rights of the corporation *in this proceeding* or prevent it from obtaining an accounting. In other words, that Rudin and Johnson, the only real complainants, notwithstanding their waiver and acquiescence, might maintain this suit and have an accounting for the benefit of the corporation. This is one of the questions involved in the case.

In Babcock v. Farwell, 245 Ill. 14, 91 N. E. 683, 692, 137 Am. St. Rep. 284, 19 Ann. Cas. 74, this question was under consideration in a suit brought by Babcock, a stockholder, against the corporation and its directors for mismanagement of the directors in trading with themselves in violation of their trust and to the detriment of the corporation. There the court said: "By expressly waiving his objections to the transactions now complained of, he [Babcock] debarred himself from seeking relief against them [the directors] in his own right. He could not, therefore, indirectly obtain such relief by bringing suit in the right of the corporation or of other stockholders. A complainant cannot maintain a bill and obtain relief unless he has himself sustained a wrong. The theory of a stockholder's suit is that the stockholder has sustained a wrong through the injurious effect upon his stock of the wrong done to the corporation. If he has himself consented to or participated in the acts constituting such wrong, or has waived his right to object to them, he cannot afterwards maintain a bill, on account of such transactions, for the benefit of the corporation or of other stockholders. Burt v. British Ass'n, 4 De G. & J. 158; Brown v. De Young, 167 Ill. 549, 47 N. E. 863; Wells v. Northern Trust Co., 195 Ill. 288, 63 N. E. 136."

In 3 Cook on Corporations (8th Ed.) § 748, it is said: "* * * the complaining stockholder controls the case and may continue, compromise, abandon or discontinue it at his pleasure until a stockholder similarly situated has procured an order to be made a party to the action, or until interlocutory judgment is entered"—citing Hirshfeld v. Fitzgerald, 157 N. Y. 166, 51 N. E. 997, 46 L. R. A. 839; Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663; Tremain v. Guardian, etc., Ins. Co., 11 Hun (N. Y.) 286.

■ If a complaining stockholder may abandon or discontinue his suit, it is equally plain that if he has acquiesced in, or waived his right to object to, the wrong of which he complains, his suit may be dismissed; other stockholders not having been admitted as parties to the action.

The bill in equity, which the master finds that Rudin, Johnson, and Sawhill caused to be drafted and prepared to be filed, in the latter part of December, 1920, was a bill in which Johnson, Rudin, Sawhill, and Lothrop, all stockholders in the King-Richardson Company, were named as plaintiffs and the King-Richardson Company and Nevins were named as defendants. In this bill it was charged that Nevins, while in the control of the company, had dealt with himself, had furnished books to the corporation of inferior grade, had charged and received excessive prices for books printed, bound and furnished to the corporation, had charged and received a salary of $8,000 a year, which was far in excess of the value of his services; and prayed for an accounting between the defendant corporation and Nevins "in order to ascertain the amount of profits and earnings of the defendant corporation unlawfully appropriated by the defendant Nevins."

■ In this connection, the master found that Johnson was the president of the corporation from 1906 to 1914; that in 1914 Rudin was president; and that in 1915 Nevins was elected president; that for more than twelve years, prior to this litigation (which would be back of 1914), the corporation had employed Nevins (who was the Springfield Printing & Binding Company) to do the printing and binding of its books and the work done was billed by him to the corporation; that there was no written contract at any time between the corporation and Nevins for this work; that from January 1, 1914, Rudin was the representative of the corporation at Chicago for the sale of its books, under an agreement whereby he was to bear the expenses of the agency and have a uniform discount of 75 cents a set on the retail prices of each set; that this contract was extended with some modifications to January 1, 1921; that in December, 1920, Rudin, having received notice from the corporation of a

proposed increase in the prices of the books, came to Springfield for the purpose of preventing the increase; that Rudin was joined by Sawhill, who conducted the only other selling agency for the corporation, but as Nevins, acting for the corporation, refused to accede to their demands, they enlisted Johnson in their undertaking; that their undertaking was without effect, until they caused the bill in equity, above spoken of, to be drafted and prepared to be filed in court; that at that time Rudin, Johnson, and Sawhill had informed themselves and knew what was a reasonable price for the corporation to pay Nevins for manufacturing the book; that what Rudin and Sawhill wanted was to secure a favorable contract, and what Johnson was desirous of was that the business of the corporation "continue as heretofore," if it could be done on a profitable basis; that as the result of threats to file the bill unless an agreement was arrived at, conferences were held between these parties, at which the question of prices to be paid to the corporation by Rudin and Sawhill, and the price to be paid to Nevins by the corporation, were discussed, which resulted in an agreement fixing the prices to be paid by Rudin and Sawhill to the corporation and by the corporation to Nevins for sets of The Bible Story for the years 1921 and 1922; that at the same time it was agreed that "all matters of difference and all claims regarding breach of contract [sic duty] alleged in draft bill of complaint are settled"; that at the same time, December 23, 1920, Rudin took an option on Nevins' stock to run until January 10, 1923, in which it was provided that, during the time covered by the option, Nevins should charge the corporation for manufacturing the Bible Story certain prices and that Nevins' salary from the corporation should not exceed its present amount ($8,000); and that as a result of these and other arrangements between the parties the bill in equity was abandoned and the plaintiffs therein ceased to prosecute the claims set forth in the bill; that Rudin, Sawhill, and Johnson then understood that Nevins would continue to manufacture the Bible Story for the corporation, and agreed that the prices stipulated in the Rudin option were reasonable prices for him to charge therefor during the time mentioned in the option; that at this time these prices were fair and reasonable prices for the work; and that Johnson "approved of the entire transaction."

As the bill in equity of December, 1920, prayed for an accounting and that such profits and earnings of the corporation as may have been unlawfully appropriated by Nevins, "both as president and treasurer of the defendant corporation and as proprietor of the Springfield Printing & Binding Co.," might be determined and paid to the corporation, and as this bill was abandoned under the circumstances above stated, we think that Rudin and Johnson are estopped and precluded from calling upon Nevins to account for his transactions with the corporation prior to January 1, 1921; and that they are likewise estopped and precluded from having an accounting for the years 1921 and 1922, for the reason they acquiesced, not only in his conduct and management of the business prior to January 21, 1921, but after that time by approving the prices he was to charge for manufacturing the books during the remaining two years and the salary he was to receive. During these two years the master does not find that Nevins charged or received a greater sum than Rudin and Johnson had agreed or acquiesced in his receiving during the years 1921 and 1922, or that he did thereafter receive a greater sum. What he does find is that the prices charged and received in 1921 and 1922 for printing and binding, or for binding, sets of the books, while not greater than the prices agreed upon or acquiesced in, exceeded what were then reasonable prices for the work, and that this was largely due to the fact that there was a very substantial drop in the price of paper below what Nevins had previously been obliged to pay.

We are therefore of the opinion that, while the reason assigned by the District Court for dismissal of the bill was not correct, the order of dismissal was proper and that its decree should be affirmed.

The decree of the District Court is affirmed, with costs in this court to the appellees.