## MAY v. MIDWEST REFINING CO. et al.
### No. 951.

District Court, D. Maine, S. D.
Dec. 9, 1938.

Moses Kohn, of Mobile, Ala., Jacob H. Berman, of Portland, Me., and William B. Skelton, of Lewiston, Me., for plaintiff.

Verrill, Hale, Booth & Ives, of Portland, Me., for all three defendants.

PETERS, District Judge.

This cause came on to be heard on a special motion, so called, in which the defendants ask that certain prayers in the bill, relating to the relief asked for, be struck out and dismissed and that damages be assessed on the basis of the allegations in the bill. The motion is somewhat analogous to an offer to be defaulted in an action at law.

The original bill, filed January 13, 1933, was brought by the plaintiff as a minority stockholder in the defendant Midwest Refining Company, for the benefit of himself and such other stockholders as might join. No others have asked to come in. The plaintiff's ownership was alleged to be 50 shares out of 624,074 issued.

After various interlocutory proceedings an amended bill was filed on April 7, 1937, in which it was alleged, in substance, among other things (omitting conclusions of the pleader and statements not pertinent to the issue), that, at the time of the transactions complained of, the defendant, Standard Oil Company, owned 99.96% of the stock of defendant, Midwest Refining Company, and about 89% of the stock of defendant, Stanolind Oil and Gas Company, and wholly controlled these companies as subsidiaries; that, at a meeting of the stockholders of Midwest, called and held in October 1932, for the purpose of considering and authorizing a proposed sale of a part of its assets to Stanolind and the remainder to Standard, 623,850 shares were

562

voted in favor of the proposition, of which 623,825 were voted by Standard itself, 8 shares were voted by directors of Midwest, the stock in their names being actually owned by Standard, and 17 by other persons; that 102 shares were voted against the proposition, including the 50 shares of the plaintiff. The vote was to sell all the assets of Midwest for their net book value, and the sales thus authorized were carried out.

It is also alleged in affidavits and otherwise, and it seems not to be disputed, that, of the 52 shares other than the plaintiff's, voted against the sale, Standard now owns 40; and that the owner of the other 12 shares has filed a dissent and taken proceedings under the Maine statute to have his shares valued; also that the holders of the 122 shares not voted at the meeting, with the exception of one share, have accepted the liquidating dividend. It seems that the owner of the one share cannot be found. It thus appears from the length of time since the suit was begun and the situation in relation to the few shares 'of stock not voted in favor of the proposition, that the possibility of any stockholder now desiring to join the plaintiff in this litigation is negligible.

The plaintiff further alleges, in substance:

(1) That for some years prior to the above vote to sell, in transactions between Standard and Midwest involving large purchases of merchandise, balances against Standard on the books of Midwest were allowed to stand uncollected an undue length of time without charging or collecting interest. In this connection it is claimed that after the vote to sell, and when agents of the plaintiff investigating the matter called it to the attention of Midwest, the latter set up a charge for interest on its books at the rate of 3% on such balances, when it should have been 8%, and that Standard owes the difference. It is also alleged that Midwest had not intended to take any action about this interest, and at the time of the vote had expected to receive a consideration for the sale inadequate at least to the extent of such interest.

(2) That the book value of the assets of Midwest was some $5,000,000 more than the amount actually paid for them in the sale, and that the other defendants did not pay Midwest what they agreed to by that amount.

(3) That among the assets of Midwest was a block of stock in Standard carried on the books of Midwest at about $165,000, and that, three days before the stockholders' meeting, this stock was sold to trustees of an employees' stock-purchasing plan of the Standard Oil Company for some $100,000 less than the amount for which it was carried.

(4) That Midwest, while under the control of Standard, in various instances made purchases of Standard stock for the purpose of transferring the stock to Standard, and did so at a price less than the cost to Midwest, thereby making losses on the transaction.

(5) That Midwest made no effort to find a purchaser for the property at a higher price.

And finally, referring to the sale of assets by Midwest to the other two defendant companies, the plaintiff concludes and asserts: "that this sale was a sale by the Standard Oil Company, controlling and dominating the Midwest Refining Company, as the majority stockholder to itself and its nominee and instrumentality, Stanolind Oil and Gas Company, in disregard and in breach of its duties and obligations as trustee for the minority stockholders and that such sale was a fraud upon the minority stockholders."

The prayers for relief are in substance as follows:

(a) That a receiver for the Midwest Refining Company be appointed.

(b) That the sale of the assets of Midwest Refining Company to the other two defendant companies be set aside and the property reconveyed.

(c) For an accounting of all revenues from the properties since November 1, 1932.

(d) That Standard Oil Company account for and pay to Midwest Refining Company interest on balances at the rate of 8% per annum compounded annually, less a credit for such interest as may have been heretofore paid.

(e) That Standard Oil Company pay to the Midwest Refining Company losses occasioned by purchases of stock made by Midwest for the purpose of transferring to Standard.

(f) That in case the sale of assets is not set aside in accordance with prayer (b), that the Standard Oil Company account for and pay to the Midwest Refining Compa-

ny the unpaid portion of the purchase price, alleged to be some $5,000,000, with interest thereon.

(g) That in case the sale of assets is not set aside in accordance with prayer (b), that the Standard Oil Company account for and pay to the Midwest Refining Company the difference between the book value of the stock in Standard, sold to trustees of the employees' stock-purchasing plan, and the price received for the same, being some $100,000.

(h) For such other relief as may be necessary.

The defendants' motion recites the present situation relative to stock ownership in the Midwest Refining Company in support of their proposition that "there is no other stockholder of defendant, the Midwest Refining Company, who is similarly situated to the complainant or who has any right to join in this proceeding."

The motion also alleges that the plaintiff, although voting against the sale at the stockholders' meeting, did not file his "written dissent", as required by the Maine statutes, and that therefore, by the terms of the statute, he is "deemed to have assented to such vote", and cannot be heard in this proceeding to object to the sale, and is not entitled to have the sale set aside. And, further, that the plaintiff's proportionate stock ownership in the Midwest Company is so small, being .000080119, and his share in any recovery under the prayers of the bill so inconsiderable ($80.12 to a million dollars), that it could be but a small fraction of the expense the defendants would necessarily incur in preparing for trial, which would require, among other things, the taking of a great mass of testimony in the west. And, after denying any admission of liability, the defendants offer to submit to the demands of the plaintiff, other than those based on a nullification of the sale, and to pay "to the complainant his full share of any amount that could be recovered under the remaining prayers (d), (e), (f) and (g) of his bill, together with such costs and counsel fees as shall be fixed and determined" by the court; the motion concluding as follows:

"Wherefore the defendants move that said prayers (b) and (c) be stricken from the amended bill of complaint and dismissed and that this court determine the amount of the plaintiff's share in any re-covery of the full amount set forth in the remaining prayers (d), (e), (f) and (g) of said bill and determine the amount of costs and counsel fees to which the complainant and his counsel are entitled, and that upon payment by these defendants to the complainant or into this court of the amount so determined the complainant's bill be dismissed."

The Statutes of Maine, above referred to in Chapter 56, Section 63 and following, relate to the rights of minority stockholders, and as the Midwest Company is a Maine corporation, are applicable here. They provide in substance that a corporation may sell and transfer all of its assets and that a minority stockholder who dissents from the terms of the sale may, upon following the provisions of the statute, have his stock appraised and be paid the amount of said appraisal for which he has a lien upon the assets of the corporation.

If the defendants' contention, that the remedy afforded a dissatisfied stockholder by the statute is exclusive, should be sustained, there would seem to be no reason for this bill remaining in court. I cannot, however, go so far as that. It was definitely decided in this district by Judge Johnson, in the case of MacArthur v. Port of Havana Docks Co., D.C., 247 F. 984, that the statutory remedy is not exclusive. The opinion in that case contains the following language [page 987]:

"The remedy provided for a dissenting minority stockholder by the Maine statute is not exclusive, so that a court in equity is restricted thereby in affording relief by the application of equitable principles, where there has been fraud or oppressive and unfair treatment of the minority in a sale or plan of reorganization proposed by the majority stockholders of a corporation.

"It would be most unjust if a minority stockholder were compelled to accept an unfair and oppressive proposition made by the majority stockholders, or, in the event of his failure to accept it, be compelled to part with his stock and forego the opportunity to share in the future earnings of the corporation.

"It is not only when the proposed sale or plan of reorganization is not tainted with fraud, but also when it is not oppressive or unfair toward the minority stockholders, that it can be said that the latter have

an adequate remedy under the Maine statute. If it were otherwise, instead of offering any protection to the minority stockholder against the selfish interests and cunning of the majority, the statute would prove an instrument to be used for his destruction."

Adhering to the principles of the above decision, as I do, it follows that the plaintiff is not confined to his statutory remedy and is properly in court if fraud, oppression or unfair treatment is charged.

It is reasonably clear that the facts set forth in the bill do not constitute a charge of actual, intentional fraud, oppression or unfair treatment and will not sustain such a characterization. Nor is such an inference reasonable when the situation of the parties is considered. Neither is fraud as such, or its equivalent, reasonably inferable from the facts set forth. On the other hand the facts as recited may fairly be said to be sufficient in allegation at least to support a charge of unfair treatment and to entitle the plaintiff to "relief by the application of equitable principles."

The plaintiff makes certain other charges against the sale, like failure of consideration and breach of a fiduciary relationship, which are not in issue and which it is not necessary to decide or consider except to say that as allegations they aid in supporting jurisdiction in equity.

I do not lose sight of the fact that the dismissal of the bill is not asked for, either for lack of jurisdiction or otherwise, but the statute of March 3, 1875 (U. S.C.A., title 28, Section 80), explicitly charges the district courts with the duty of enforcing jurisdictional limitations. McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 182, 56 S.Ct. 780, 80 L.Ed. 1135.

If the statutory remedy of a minority stockholder in a case like this should be held exclusive the bill would have to be dismissed regardless of the attitude of the defendants.

Under the Maine statute a sale of all the assets of a corporation is permitted, even to a majority stockholder if good faith accompanies the transaction. An objecting stockholder has protection by valuation proceedings if he considers the price for the sale inadequate. His right to keep the stock as a continuing invest-

ment is not an absolute one, being modified by the laws of the sovereignty under which the corporation came into being. If such a sale is tainted with fraud or involves unfair dealing or oppression of a minority the statutory remedy may be waived and application made to the courts for relief "by the application of equitable principles." A proposed sale of that character may be enjoined and, no doubt, in clear cases, set aside, when necessary to remedy wrong and do equity.

The plaintiff claims to be in a situation where he is entitled to equitable relief, and for the purposes of this motion it is assumed that he is. The truth of his allegations is not in issue and is not determined. The particular form of relief selected by him was the proper and not unusual one of suing in behalf of himself and such others in the same situation as might desire to join in the suit. The possibility that others might have the right to ask to join would obviously complicate the situation in the presence of this motion, were it not apparent that it is not reasonable to anticipate such an intervention. So the question may be considered on the practical basis of the plaintiff being the only one interested on his side.

It is a fair assumption that the plaintiff is interested in obtaining relief measured in money. He feels injured in not being permitted to continue to hold his original investment, but he was supposed to know the law of Maine when he invested. He expresses his desire and interest in having all the property sold (stated by counsel to be in value more than eighty million dollars) restored and re-transferred to the corporation which sold it; but it may be assumed that his interest is not wholly altruistic.

With all interested parties in court, and the plaintiff making a complaint involving the value of his holdings, which the defendants are willing to satisfy, it does not seem reasonable to use such a difficult, clumsy and harsh method of redress as that urged by the plaintiff, if any other can be found that is simple and efficacious as well as just and equitable.

The injury that the plaintiff has suffered (assuming his allegations are well founded) is that Standard and Stanolind owe Midwest money, a part of which would go to plaintiff. He specifies four claims for money that Midwest has against Standard, which he desires enforced and

which Standard offers to pay, so far as the plaintiff is concerned. Two of these claims (d) and (e) in the prayer, he wants collected after annulment of the sale, and the other two, (f) and (g), he asks to be collected in case the sale is not annulled.

As a matter of fact the matters and acts complained of and referred to in prayers (d), (e) and (g), have nothing to do with the transaction of the sale, but were separate transactions consummated before it took place, and if plaintiff's contention is correct Standard would owe the amounts referred to independently of the sale and independently of anything that could make the sale invalid.

Prayer (f) refers to a claim that the whole consideration agreed upon for the sale was not paid, and that there is still due some five million dollars under the contract of sale. Defendants claim that plaintiff is in error in his computations which leave five million dollars of the consideration still unpaid, but accede to the plaintiff's claim that if the sale is not set aside this amount should be paid; and this, of course, has no reference to the validity of the sale. In fact it would seem that all these matters could be fully covered in a stock valuation proceeding under the statute; but the defendants have offered to have them adjusted in this proceeding without further controversy, provided they can settle directly with the plaintiff, and it is too late now to adopt any other proceeding.

█ It seems clear that to attempt to grant relief by annulling this sale made six years ago and restoring such a vast amount and diversity of property as an oil company of this size must have owned, is wholly impracticable. What counsel refers to as an "eighty million dollar egg" of that character cannot be unscrambled and the expense and time involved in trying to do so would be so great as to amount to a denial of justice.

If the facts set forth could fairly bear the charge of fraud, or that the transaction was tainted with fraud, it might be another matter. Practical expediency would not be much considered. See In re Doe Run Lead Co., 283 Mo. 646, 223 S. W. 600.

The situation depicted here might sustain a charge that the result of the transaction was unfair or inequitable, but hardly more than that, as I view it.

I agree with the defendants' contention that to allow the plaintiff the extraordinary relief demanded in his prayers (b) and (c) would be inequitable, particularly in view of the defendants' offer to pay the plaintiff all the pecuniary loss he could have suffered on the basis of his own complaint, together with costs and counsel fees.

I think there can be no doubt of the right of the court, under its general equity powers, to bring this long controversy to a conclusion in the way suggested in the motion of the defendants, even though it is somewhat unusual.

█ The defendants' counsel have furnished some citations to support the principle that equity will not necessarily enforce a legal right if to do so would be inequitable.

"In some jurisdictions the courts have refused to enjoin an act manifestly illegal when it has seemed more inequitable to grant than to refuse the injunction." Pomeroy Equity Jurisdiction, 4th Ed., Sec. 1776.

"In rare instances the mere onerousness or oppressiveness of the consequences of enforcement may be so great that although there is no other reason, equity will not grant the performance that plaintiff is otherwise entitled to." Pomeroy Equity Jurisdiction, 2nd Ed., Sec. 2215; Farmer v. City of St. Paul, 65 Minn. 176, 67 N.W. 990, 33 L.R.A. 199; Miller v. Des Moines, 143 Iowa 409, 122 N.W. 226, 23 L.R.A.,N. S., 815, 21 Ann.Cas. 207; Brasher et al. v. Miller, 114 Ala. 485, 21 So. 467.

The motion will be granted, the particular form of the decree to be determined after a conference with counsel.