**MAY v. MIDWEST REFINING CO. et al.**

No. 3637.

Circuit Court of Appeals, First Circuit.

June 6, 1941.

See, also, D.C., 25 F.Supp. 560.

William G. Caffey, of Mobile, Ala. (William B. Skelton, of Lewiston, Me., and Leo M. Brown, of Mobile, Ala., on the brief), for appellant.

Brooks Whitehouse, of Portland, Me. (Leon V. Walker, of Portland, Me., on the brief), for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a final decree of the District Court dismissing upon condition a bill in equity brought by the plaintiff as a minority stockholder in the defendant Midwest Refining Company.

The plaintiff's original bill was filed on January 13, 1933, and approximately two months later the defendants filed a joint and several answer in which they admitted

certain allegations therein and denied others. Various interlocutory proceedings followed which have no bearing upon any issue raised by this appeal but which consumed over four years. On April 7, 1937, the plaintiff filed an amendment to his complaint, in form a new bill, which was allowed by the court on November 4, 1937, and on January 13, 1938, the defendants, by way of answer to this amended bill, filed what they refer to as a special motion.

In both his original and his amended bills the plaintiff alleges that he is a citizen and resident of the State of Alabama; that he brings this suit on behalf of himself and all other stockholders of the Midwest Refining Company similarly situated who may wish to join him therein and contribute to the expenses thereof; that on November 16, 1925, he became the owner of record of 50 shares of the stock of the Midwest Refining Company, a corporation organized in 1914 under the laws of the State of Maine; that this corporation was, from the time of its organization, "engaged in the business of producing and selling gas, oil or petroleum, and of operating oil refineries and selling the products thereof"; that during 1920 the defendant Standard Oil Company, a corporation organized under the laws of the State of Indiana, began to acquire control of the Midwest Refining Company by purchasing its stock; that by 1922 the Standard Oil Company had acquired a substantial majority of that stock, and by 1932 owned 623,825 shares out of a total of 624,074 shares outstanding, or 99.96 per cent of it; that since 1922 all the directors of the Midwest Refining Company have been nominated and elected by the Standard Oil Company, each of whom have held of record but one share of the stock of the Midwest Company; and that the defendant Stanolind Oil and Gas Company, a corporation organized in 1930 under the laws of the State of Delaware, is a producing subsidiary of the Standard Oil Company, a great majority of its stock being either owned or controlled by the latter.

The plaintiff further alleges in both of his bills that on October 27, 1932, at a meeting of the stockholders of the Midwest Company duly warned and called, it was voted to sell part of the properties and assets of that company to the Stanolind Oil and Gas Company and the remainder thereof to the Standard Oil Company, both sales to be on the basis of the net book value of those properties and assets as they appeared on the books of the Midwest Company at the close of business on October 31, 1932, and to declare a liquidating dividend. At this meeting 623,850 shares were voted in favor of the sale and liquidation. Of this number 623,825 were voted by the Standard Oil Company itself, 8 were voted by the 8 Midwest directors, and 17 by other persons. Of the remaining shares outstanding 102 were voted against the sale, of which number the plaintiff owned 50, and 122 shares were not represented and were not voted. Persons who claimed to be the owners of 17 of these 122 shares sent a proxy to the meeting but he was not permitted to vote because on the books of the Company those 17 shares stood in the names of voting trustees who were neither present nor represented. The owner of another one of these 122 shares the defendants have not been able to find. The conveyances necessary to transfer the property and assets of the Midwest Company to the Standard and Stanolind companies in accordance with the above vote were executed soon after that vote was taken. The defendants in their answer to the plaintiff's original bill admit all of the foregoing allegations.

In his amended bill the plaintiff then goes on to allege that since 1922 the Standard Oil Company has "exercised complete control, domination and management of the affairs and business of the said Midwest Refining Company", and from this he asserts as a conclusion of law that the Standard Oil Company became a trustee for the Midwest Company and its minority stockholders thereby rendering the sale of the assets and property of the Midwest Company to the Standard Oil Company and to its instrumentality the Stanolind Oil and Gas Company void under the law of Maine which prohibits a trustee from being himself the purchaser of property which he holds in trust. The plaintiff also asserts that the above sale constituted a breach of the fiduciary duties and obligations imposed by law upon a majority stockholder in the position of the Standard Oil Company in that it made no effort to sell the property and assets of the Midwest Company "to any other company or companies, although common prudence and a desire to represent in good faith the interest of the minority stockholders, as well as that of the majority stockholder, required that, had a sale been necessary, every

effort should ,have been made to interest every prospective purchaser both in the assets and properties as an entirety and in separate parcels".

In addition the plaintiff's amended bill contains other charges of misconduct against the defendant Standard Oil Company. He charges that prior to the sale described above, that Company, due to its domination and control over the affairs of the Midwest Company, caused the latter to permit large balances due to it for purchases of its product on open account by the Standard Oil Company to remain unpaid for long periods of time without collecting any interest thereon; that the Standard Oil Company failed to pay to the Midwest Company when it purchased the latter's assets the full amount of the book value thereof as required by the terms of the agreement of purchase; that three days before the stockholders' meeting of October 27, 1932, the Standard Oil Company caused the Midwest Company to transfer to trustees of an employees' stock purchasing plan of the Standard Company for approximately $65,000 a certain block of stock in the Standard Company owned by the Midwest Company and carried on the latter's books for approximately $165,000; and that the Midwest Company on various occasions while it was under the control of the Standard Company made purchases of its own stock for the purpose of transferring the same to Standard at prices far below the cost of that stock to Midwest.

The relief for which the plaintiff asks is:

(a) That a receiver be appointed for the Midwest Company;

(b) That the sale of the properties and assets of the Midwest Company to the other two defendants be set aside and these properties and assets re-conveyed;

(c) That the Standard and Stanolind companies be required to account for and pay over to the Midwest Company all revenues received by them from said properties since November 1, 1932;

(d) That the Standard Company pay to the Midwest Company interest on all open account balances allowed to remain overdue at the rate of 8 per cent per annum compounded annually less any credits which might be found for interest heretofore paid;

(e) That the Standard Company reimburse the Midwest Company for all losses occasioned to the latter by reason of purchases of its own stock made by it for the purpose of transferring that stock to the Standard Company;

(f) That in the event that the sale of assets is not set aside in accordance with prayer (b) above, the Standard Company be required to account for and pay over to the Midwest Company the unpaid portion of the agreed purchase price with interest thereon;

(g) That in the event that the sale of assets is not set aside in accordance with prayer (b) above, the Standard Company be required to account for and pay over to the Midwest Company the difference between the book value of the stock transferred to the trustees of Standard's employees' stock purchasing plan and the price which Midwest actually received for that stock; and

(h) For "such other, further, or different relief as the nature of the case may require and as to the court may seem proper."

The special motion filed by the defendants as an answer to this amended bill, after referring to the vote of the stockholders authorizing the sale of the Midwest property and assets and the declaration of the liquidating dividend, states, and these statements are supported by affidavits, that the Standard Oil Company has purchased and had transferred to it all but 62 of the shares voted against the sale; that of these shares 50 are owned by the plaintiff herein and 12 by a stockholder who has elected to have his shares valued under the Maine valuation .statute; that the owners of all but one of the shares not represented and voted at the meeting have, without protest, accepted their liquidating dividend; and that the owner of the one remaining share still cannot be found. The motion then alleges that the plaintiff, having failed to comply with the provisions of the valuation statute referred to above, is not entitled to have the sale set aside; that his interest amounts to but $80.12 for each million dollars which might be found due according to allegations (d), (e), (f) and (g) of his bill; and that the expense to the defendants of defending this suit would be enormous and out of all proportion to the interest of the plaintiff. Wherefore they move that prayers (b) and (c) be stricken from the plaintiff's amended bill and dismissed, and offer, without admitting any liability to the plaintiff or to the Midwest Company, to pay the plaintiff his full share of any amounts which he might recover under

prayers (d), (e), (f) and (g) of his bill, together with such costs and counsel fees as may be fixed by the court.

Because of its novelty the defendants' special motion is quoted in full in the margin.[1]

[1] Now come the defendants in the above entitled cause and say that on or about January 13, 1933, this complainant filed in this Court his Bill of Complaint against these defendants setting forth, among other things, that he brought this suit as a stockholder of The Midwest Refining Company on behalf of himself and of all other stockholders of The Midwest Refining Company who might wish to join him in the said suit and contribute to the expense of said suit; that although this cause has been pending in this Court since January 13, 1933, no other stockholder in The Midwest Refining Company has joined therein; that this cause involves the sale by defendant, The Midwest Refining Company of all its assets, in part to defendant Standard Oil Company and in part to defendant Stanolind Oil and Gas Company; that such sale was made on November 1, 1932, pursuant to vote of the stockholders of defendant, The Midwest Refining Company at a meeting duly and legally called and held on October 27, 1932; that at said meeting 623,952 shares of the total outstanding 624,074 shares of stock of defendant, The Midwest Refining Company, were represented in person or by proxy; that all but 102 shares out of the 623,952 shares represented at said meeting voted in favor of the resolution approving the proposed sale; that said 102 shares were voted in opposition to said resolution; that the owners of said 102 shares, voting in opposition to said resolution with their respective holdings of stock were as follows:

This complainant,

| | |
|---|---|
| Ben May | 50 shares |
| Norwin S. Bean | 12 " |
| Henry C. Cline | 30 " |
| Arthur Dewar | 5 " |
| Sidney J. Dillon | 5 " |

that since the date of said stockholders' meeting the said Henry C. Cline, Arthur Dewar and Sidney J. Dillon have sold and transferred their said shares in defendant, The Midwest Refining Company, to defendant, Standard Oil Company, and said shares have been transferred on the books of defendant, The Midwest Refining Company, so that the said Cline, Dewar and Dillon are no longer stockholders in this company; that said Norwin S. Bean filed his written dissent to said sale as provided by the Statutes of the State of Maine and thereby elected to have his stock valued under said Statutes of the State of Maine; that a valuation proceeding under said Statute as to said shares of the said Norwin S. Bean is now pending in the District Court of the United States for the District of Maine; that the 17 shares of stock referred to in the last sentence of Paragraph Nine of the Complainant's Amended Bill of Complaint filed in this cause, therein stated to have stood in the names of H. J. Alexander, John C. Mitchell and Raymond E. Jones as voting trustees for Guy Ewing, to the extent of 15 shares and Samuel Harper and Philip McQuestion to the extent of 1 share each, have since said meeting been sold to defendant, Standard Oil Company, and transferred on the books of defendant, The Midwest Refining Company, and certificates therefor issued to defendant, Standard Oil Company, so that neither said Guy Ewing, Samuel Harper or Philip McQuestion or said voting trustees are now stockholders in defendant, The Midwest Refining Company; that the 122 shares of stock of The Midwest Refining Company not represented at said stockholders' meeting were owned by 14 other stockholders all of whom have accepted their liquidating dividend from defendant, The Midwest Refining Company, and have never made any objection or protest against said sale or instituted any proceedings in opposition thereto; that by reason of the foregoing facts there is no other stockholder of defendant, The Midwest Refining Company, who is similarly situated to the complainant or who has any right to join in this proceeding; that other than the complainant, the only one of the stockholders of defendant, The Midwest Refining Company, who since said sale has not either transferred his shares to defendant, Standard Oil Company, or accepted without protest his liquidating dividend is the said Norwin S. Bean who, in fact has retained since about December 1, 1932, but not deposited his check for his liquidating dividend and as to whose shares, as hereinbefore stated, a valuation proceeding under the Maine Statute is now pending; that the complainant's proportionate stock ownership in defendant, The Midwest Refining Company, is 50/624,074ths or .000080119, so that his share in any amount found to be owed by defendants Standard Oil Company and Stanolind Oil and Gas Company to defendant The Midwest Refining Company in this cause would amount to only $80.12 for each million dollars so found to be due; that complainant, while voting in the negative at said stockholders' meeting on said resolution for said sale, failed and neglected

In passing upon this motion[2] the District Court ruled that the statutes of Maine referred to therein were applicable but that the remedy which they provide for a dissenting minority stockholder is not in all cases exclusive. He then found that although the plaintiff had alleged a situation which permitted him to proceed otherwise than under the statute, still: "With all interested parties in court, and the plaintiff making a complaint involving the value of his holdings, which the defendants are willing to satisfy, it does not seem reasonable to use such a difficult, clumsy and harsh method of redress as that urged by the plaintiff, if any other can be found that is simple and efficacious as well as just and equitable", and "to attempt to grant relief by annulling this sale made six years ago and restoring such a vast amount and diversity of property as an oil company of this size must have owned, is wholly impracticable. What counsel refers to as an 'eighty million dollar egg' of that character cannot be unscrambled and the expense and time involved in trying to do so would be

to file his written dissent therefrom with the President, Clerk or Treasurer of defendant The Midwest Refining Company, within one month from the day of said vote as provided in Section 64 of Chapter 56 of the Revised Statutes of the State of Maine; that section 68 of said Chapter 56 of the Revised Statutes of the State of Maine which was in effect at the date of said vote and has continued to be in effect, provides that

"any stockholder failing to file his dissent as required in section sixty-four shall be deemed to have assented to such vote";

that by reason of said provision the complainant who was not at the time of said vote, and since said vote has not been, legally incapacitated, assented to said sale and cannot be heard in this or any other proceeding to object to said sale; that in prayers (b) and (c) of his amended bill filed in this Court on April 7, 1937, complainant prays that said sale be set aside and that defendants, Standard Oil Company and Stanolind Oil and Gas Company, be ordered and directed to re-convey to defendant, The Midwest Refining Company, all properties and assets conveyed or attempted to be conveyed to them and that they be required to account for and pay over to defendant, The Midwest Refining Company, all revenues received from said properties on, from and after November 1, 1932; that by virtue of the provisions of said section 64 of Chapter 56 of the Revised Statutes of the State of Maine above referred to, the complainant is not entitled to the relief prayed for in said prayers numbered (b) and (c); that the defendants herein should not be put to the great expense involved in the taking of testimony, preparation and trial of the issues raised by said prayers (b) and (c); that said defendants are for the reasons aforesaid entitled as a matter of law and equity to have said prayers (b) and (c) stricken from the complainant's said Amended Bill of Complaint; and the defendants further say that by reason of the fact that the complainant's share in any recovery under the remaining prayers of his bill will be a small fraction of the expense to which the defendants will be put in the preparation of this cause which will require the taking of a great mass of testimony in various parts of the West, the defendants, though denying liability for the various matters set forth in the complainant's said Amended Bill of Complaint, are ready and willing in order to avoid the excessive cost of the preparation and trial of this cause, to submit to the demands of the complainant as set forth in the remaining prayers of his said Bill and hereby offer to pay to the complainant his full share of any amounts that could be recovered under the remaining prayers (d), (e), (f) and (g) of his bill, together with such costs and counsel fees as shall be fixed and determined by this Honorable Court; that this offer is made upon the condition that said defendants may thereby avoid said expense of preparation and trial of this cause and said offer does not constitute any admission of liability on the part of the said defendants or any of them as to any of the matters set forth in said Amended Bill of Complaint and is made without prejudice to their right of defense to any and all matters set forth in said Amended Bill of Complaint in the event that this cause shall proceed to trial.

Wherefore the defendants move that said prayers (b) and (c) be stricken from said Amended Bill of Complaint and dismissed and that this Court determine the amount of the plaintiff's share in any recovery of the full amounts set forth in the remaining prayers (d), (e), (f) and (g) of said bill and determine the amount of costs and counsel fees to which the complainant and his counsel are entitled and that upon payment by these defendants to the complainant or into this Court of the amount so determined, the complainant's bill be dismissed.

[2] 25 F.Supp. 560, 564.

so great as to amount to a denial of justice." The conclusion of the court below is stated as follows:

"I agree with the defendants' contention that to allow the plaintiff the extraordinary relief demanded in his prayers (b) and (c) would be inequitable, particularly in view of the defendants' offer to pay the plaintiff all the pecuniary loss he could have suffered on the basis of his own complaint, together with costs and counsel fees."

Consequently, after granting the defendants' motion, the District Court appointed a master to take testimony, first "In relation to the amount which would represent the plaintiff's proportion, based on his proportionate stock holding in Midwest Refining Company, of the amounts claimed by the plaintiff in prayers d, e, f and g of the bill, assuming the allegations of the bill on which said prayers d, e, f and g are predicated to be true", and second "In relation to the amount allowable to the plaintiff for counsel fees and expenses arising out of this litigation". At the hearing before the master the parties through their counsel agreed that the plaintiff's proportion of the amounts which he claimed to be due to the Midwest Refining Company under prayers d, e, f and g of his bill amounted to $1,246.-22 as of November 1, 1932, but they could not agree on the proper allowance for counsel fees and expenses, and the master took testimony on these matters. The District Court, after considering this testimony, ordered that prayers (b) and (c) be stricken from the plaintiff's amended bill of complaint; that the defendant Standard Oil Company pay into court $1,246.22 together with interest thereon at the rate of 6 per cent per annum from November 1, 1932; that the same defendant pay into court $40,800 for the plaintiff's counsel fees and $2,346.27 for his expenses, and finally, after assessing costs against this defendant, ordered "that upon payment of said sums, with interest thereon at the rate of six per cent (6%) per annum from this date, the plaintiff's bill be dismissed". An entry in the docket of the District Court shows that on June 12, 1940, the Standard Oil Company paid the above sums into court in accordance with this decree.

For convenience the opinion from this point on will be divided into three parts. In the first the sale of the property and assets of the Midwest Refining Company to the Standard Oil Company and the Stanolind Oil and Gas Company will be considered; in the second will be considered the transactions of the Standard Oil Company with the Midwest Refining Company before the sale of the latter's assets, and in the third will be considered the question of the adequacy of the allowance made by the court below for the plaintiff's counsel fees and expenses.

The plaintiff contends that he is entitled to have the sale of the Midwest Refining Company's property and assets rescinded for two reasons, first because it was void, and second because it was in breach of trust. The defendants take the position that the plaintiff is not entitled to the relief of rescission because the statutes of Maine provide him with an exclusive remedy by way of valuation and payment for his stock.

There can be no doubt that the law of Maine applies and we believe that the court below correctly interpreted it.

The material parts of the pertinent statutory provisions (Revised Statutes 1930 c. 56, § 63 et seq.) read:

"Sec. 63. No corporation shall sell, lease, consolidate or in any manner part with its franchises, or its entire property, or any of its property, corporate rights or privileges essential to the conduct of its corporate business and purposes, otherwise than in the ordinary and usual course of its business, except with the consent of its stockholders at an annual or special meeting, the call for which will give notice of the proposed sale, lease or consolidation."

"Sec. 64. If any stockholder in any corporation which shall vote to sell, lease, consolidate, or in any manner part with its franchises, or its entire property, or any of its property, corporate rights or privileges essential to the conduct of its corporate business and purposes, otherwise than in the ordinary and usual course of its business, shall vote in the negative and shall file his written dissent therefrom with the president, clerk, or treasurer of such corporation within one month from the day of such vote, the corporation, in which he is a stockholder may within one month after such dissent is so filed, enter a petition with the supreme judicial court, or the superior court, sitting in equity * * * praying that the value of the shares of such dissenting stockholders may be determined, and for other appropriate relief."

These provisions were in force in 1925 at the time when the plaintiff purchased his stock. Clearly they permit a

majority of the stockholders to liquidate their corporation over the protest of a minority, even when the corporation is a solvent and going concern, and thus they limit the right of a stockholder to keep his investment as long as he wishes, a limitation of which this plaintiff may not complain because he purchased his stock while the statute was in effect (In re Doe Run Lead Co., 283 Mo. 646, 223 S.W. 600), but it does not follow from this that the remedy of valuation and payment by the liquidating corporation which the statute provides is in all cases, as the defendants argue, an exclusive one. The statute does not in terms provide that its remedy is exclusive and no decision of the Supreme Judicial Court of Maine so interpreting it has been cited to us by counsel or has come to our attention.

The only one in point appears to be MacArthur v. Port of Havana Docks Co., 247 F. 984, 987, in which Judge Johnson of this court, when sitting in the District Court of Maine, said: "The remedy provided for a dissenting minority stockholder by the Maine statute is not exclusive, so that a court in equity is restricted thereby in affording relief by the application of equitable principles, where there has been fraud or oppressive and unfair treatment of the minority in a sale or plan of reorganization proposed by the majority stockholders of a corporation." While this case is not binding upon us we are content with the reasoning by which its result is reached.

The question therefore arises whether the plaintiff has alleged in his bill that he has been the victim of either fraud or oppression. In his original bill he charged that the Standard Oil Company compelled the Midwest Refining Company to sell its property and assets for an inadequate price, but in amending his bill he dropped this charge so we have before us no allegation of inadequacy of consideration. The allegations now before us upon which the plaintiff relies to set the sale aside are (1) that it is void because it was by a trustee to itself, and (2) that the trustee sold in breach of its fiduciary duties because it made no attempt to sell the assets and property of the Midwest Company to anyone except itself and its alter ego. The first of these allegations will be considered later in this opinion. The second, as the court below found, is sufficient in allegation to support at least a finding of unfair treatment and it follows that the plaintiff, under the rule of the MacArthur case, is properly in court with his prayer to have the sale set aside and the property reconveyed.

The next question is as to the power of a court of equity to withhold its equitable relief of rescission, even though a case for such relief is made out, when it appears that to grant such relief would impose a burden upon the defendant wholly out of proportion to the benefit which that relief would confer upon the plaintiff.

There is ample authority to support the proposition that a court of equity has power to refuse a decree of specific performance solely on the ground that to give such relief would result in great injustice to one party in comparison to the value of the performance to the other. 2 Am.Law Inst., Restatement of Contracts, § 367; 4 Pomeroy, Equity Jurisprudence § 1404, 1405; 5 id. § 2215; 5 Williston on Contracts, Rev.Ed., § 1425; 65 A.L.R. 77, and cases cited. This is the rule in Maine. J. B. Brown & Sons v. Boston & Maine Railroad, 106 Me. 248, 76 A. 692. But no case has been cited to us by counsel and we have found none in which this principle was applied in a suit for rescission. However, the reason for the rule,—which is that since it is the function of a court of equity to do equity it may decline to grant relief of an equitable nature when such relief would produce an inequitable result,—is as good in one situation as it is in the other.

It follows that the District Court had power to decline to grant rescission of the sale of the Midwest Company's assets, and we see no reason to quarrel with the court below for exercising that power under the somewhat peculiar circumstances of the case at bar.

But this does not mean, as the plaintiff seems to argue, that equitable relief is denied because of the proportionately small number of shares which he owns. It means that the nature and extent of the properties and assets sold by the Midwest Refining Company to the defendants, and the commingling by the defendants of those properties and assets with others either formerly owned or later acquired by them, are proper elements for consideration in determining whether or not it would be equitable to rescind the sale.

The plaintiff contends, however, that regardless of the equities in the case, he, on

behalf of the Midwest Refining Company, is entitled to rescission as a matter of law because, under the law of Maine, a majority stockholder who exercises control and domination over the affairs of his corporation occupies a fiduciary relationship toward the corporation and its minority stockholders and that, also under the law of Maine, a sale of trust property by a fiduciary to himself is contrary to public policy and void even though in fact full value is paid and the trustee acts with the utmost fairness and only after full disclosure.

 Conceding that the plaintiff is correct in his contention that the Standard Oil Company, by reason of its alleged domination and control over the Midwest Refining Company, may be deemed a trustee for the latter and its minority stockholders (Southern Pacific Company v. Bogert, 250 U.S. 483, 491, 39 S.Ct. 533, 63 L. Ed. 1099), it does not follow that the Standard Oil Company could not as a matter of law purchase the property and assets of the Midwest Company when the latter was wound up. The reason for this is that we do not interpret the pertinent Maine cases in the same way that the plaintiff does. The plaintiff, in support of his position, relies upon Maine decisions which hold that a fiduciary, even though he acts in good faith and pays a fair price, cannot unite in himself the opposite and conflicting characters of buyer and seller. The cases which so hold are not ones involving the relationship of a controlling majority stockholder to his corporation and its minority stockholders, and they are not recent ones. A later case (Union Slate Company v. Tilton, 69 Me. 244) holds that a sale by a trustee to himself is not void but voidable, and an even more recent one (Mason v. Carrothers, 105 Me. 392, 74 A. 1030), holds that a promoter, although he occupies a fiduciary relationship to his corporation, is not thereby prevented from selling to it if he does so after full disclosure and if he acts throughout with the utmost good faith. No Maine case directly in point barring the way having come to our attention, we incline to the view from the Maine decisions referred to above and from a consideration of the practical difficulties in the way of corporate reorganization if the plaintiff's contention should be adopted, that the law of Maine conforms to the law in force elsewhere, which is that a majority stockholder in control may purchase his corporation's assets although such a transaction calls for "close" (Natural Gas Pipeline Company v. Slattery, 302 U.S. 300, 308, 58 S.Ct. 199, 82 L.Ed. 276), or "rigorous scrutiny". Pepper v. Litton, 308 U.S. 295, 306, 60 S.Ct. 238, 84 L.Ed. 281.

We come now to a consideration of the plaintiff's allegations with respect to the transactions of the Standard Oil Company with the Midwest Refining Company before the sale of the latter's property and assets. The defendants contend that they are entitled to have the plaintiff's bill dismissed upon payment to him in money of all that he personally would be able to recover in the event that in a trial upon the merits he should succeed in establishing all of the above allegations of his bill. The amount of his maximum possible recovery under these allegations has been agreed upon, and that sum has been paid into court for his benefit. The plaintiff takes the position that, since suits of this sort are in behalf of or in the right of the corporation, relief or payment should not run to him personally but to the corporation so that he and all other stockholders similarly situated may share therein derivatively.

 While it is true that the plaintiff's suit is derivative, and while it is true that it is also representative in that other stockholders similarly situated are entitled to share in the proceeds thereof, (for this reason relief in suits of this sort ordinarily, although not universally (Joyce v. Congdon, 114 Wash. 239, 195 P. 29; 41 Col.Law Rev., 405, 416 and cases cited in footnote 78), runs to the corporation in whose behalf suit is brought) it is also true "that *every* suit in a derivative capacity *necessarily* includes a suit in an individual capacity as well." Col.Law Rev., supra. Thus the plaintiff is acting a dual role. He is suing on behalf of his corporation to redress a wrong allegedly done to it, and he is also suing in his own right as a stockholder to redress a wrong which he alleges that he, himself, has sustained by reason of his stock ownership. In the latter role he "may continue, compromise, abandon or discontinue it (the suit) at his pleasure until a stockholder similarly situated has procured an order to be made a party". 3 Cook on Corporations, 8th Ed., § 748, cited with approval in Johnson v. King-Richardson Co., 1 Cir., 36 F.2d 675,

67 A.L.R. 1465. See, also, 41 Col.Law Rev., supra. But no other stockholder has sought to intervene, if there are any still in a position to do so, and thus the plaintiff's control over the litigation remains unimpaired and he can still at any time he wishes settle the case and dismiss his bill. In view of this and of the fact that, as appears above, equitable relief is inappropriate, we see no reason why the plaintiff's bill should not be ordered dismissed upon a voluntary payment to him in money of all the damages which he admits that he could possibly recover under the allegations contained therein. In short, from the plaintiff's power to dismiss his suit at will, follows the power of the court under the circumstances of this particular case, to decree a dismissal of the plaintiff's bill upon payment in full of all of his individual damages.

In our opinion Rule 23(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which requires that actions of this sort shall not be dismissed or compromised without the approval of the court and notice to all members of the class of which the plaintiff is one in such manner as the court may direct, does not apply to the situation presented in the case at bar. The reason for this is that the rule is appropriate to, and so must have been designed to cope with, a situation in which a dismissal or compromise of an action of this nature by a plaintiff would affect the rights of other members of the plaintiff's class, that is, to the situation presented when other members of the plaintiff's class have intervened, or when the wrongdoing corporation has sought to settle with the corporation which it has wronged instead of only with the individual plaintiff-stockholder who has brought suit, in either of which events the rights of other members of the plaintiff's class might be affected. But when, as here, no other stockholder has sought to intervene, and no compromise has been attempted with the allegedly wronged Midwest Refining Company, we fail to see how a compromise with the plaintiff alone could affect the rights of anyone else. There being no reason to apply the rule in the case before us it was not error for the court below to have proceeded without regard to it.

The plaintiff's argument that individual relief should not be given because to do so might prejudice the rights of creditors of the Midwest Company, if there are any, and his further argument that such relief will permit the defendants to avoid the payment of income taxes, if there should be any such tax liability, we regard as beside the point.

We come now to the third question. The defendants do not contest the plaintiff's right to counsel fees and expenses. In fact they volunteer to pay him whatever sum the court considers proper therefor. The only question is the adequacy of the court's award of $40,800 for counsel fees and $2,346.27 for expenses.

In making awards of this sort "The court below should have considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court can have." Trustees v. Greenough, 105 U.S. 527, 537, 26 L.Ed. 1157. See, also, Colley v. Wolcott, 8 Cir., 187 F. 595, and 39 Col.Law Review 784. Since we cannot say that the District Court abused its discretion we need not discuss the plaintiff's elaborate argument to the effect that the sums awarded as counsel fees and expenses are inadequate.

The decree of the District Court is affirmed, with costs to the appellees.